943 A.2d 910 (2008)
399 N.J. Super. 207
STATE of New Jersey, Plaintiff-Appellant
v.
Brenda HOFFMAN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 2008.
Decided March 31, 2008.
*911 Monica do Outeiro, Assistant Prosecutor, argued the cause for appellant (Luis A. Valentin, Monmouth County Prosecutor, attorney; Ms. do Outeiro, of counsel and on the brief).
*912 Jonathan H. Lomurro, Freehold, argued the cause for respondent (Lomurro, Davison, Eastman & Munoz, P.A., attorneys; Blake R. Laurence, on the brief).
Before Judges GRAVES, SABATINO and ALVAREZ.
The opinion of the court was delivered by
GRAVES, J.A.D.
This is an appeal by the State, pursuant to R. 3:28(f), from an order admitting defendant Brenda Hoffman into the Monmouth County Pretrial Intervention (PTI) Program over the objection of the Monmouth County Prosecutor's Office. On appeal, the State contends the trial court "discounted the prosecutor's stated consideration of defendant's mental illness" and "substituted its judgment for that of the prosecutor." Based on our review of the record and the applicable law, we conclude the prosecutor's decision to reject defendant's application was not a patent and gross abuse of discretion, and we reverse the order admitting defendant into PTI.
In a five-count indictment, defendant was charged with third-degree terroristic threats, N.J.S.A. 2C:12-3(a) and (b) (counts one and two); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a) and/or (b) (count three); third-degree possession of a weapon (kitchen knives and a butcher knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count five). On April 23, 2007, a PTI investigator provided a report to the court recommending defendant be accepted into the PTI program. The report noted defendant was a forty-eight-year-old female who had "no prior criminal involvement," and concluded she was "a suitable candidate for participation in PTI provided she complie[d] with directives regarding her mental health."
In a four-page "PTI rejection memorandum" dated May 16, 2007, the Monmouth County Prosecutor's Office described the events leading up to defendant's arrest as follows:
On November 21, 2006[,] at approximately 10:19 [p.m.,] Sergeant William Cowan, Corporal Mary Ann Smith, Patrolman Michael Tristao, Patrolman [Richard] Jaeger and Patrolman [William] Marvel were dispatched . . . in response to the homeowner, Thelma Stewart[,] reporting that her daughter, the defendant[,] was out of control in the house and was armed with a knife. All units arrived at the same time. Upon approaching the house the defendant had the front door open and the screen door open and yelled to the police as they approached, "I am going to string you up tonight, you are done." The defendant continued to yell and told the police to leave. The defendant at this time was armed with two large kitchen knives in her left hand and a large meat cleaver in her right hand. The defendant pointed the knives at the police and yelled, "I will kill you unless you can prove who you are." All officers on the scene were dressed in full uniform. Corporal Smith told the defendant her name and told her to put the knives down. . . . The defendant though kept flailing the knives pointing the knives in the direction of the police and acting as if she was going to throw them at the police. . . . The defendant was told again to put the knives down so that the police could talk to her. She refused and continued yelling that she was going to kill the police. . . . The defendant continued to yell and was more violent and began cutting and stabbing a cardboard box that was on the front porch. The defendant stated that this is what *913 she was going to do [to] the police. . . . The defendant was told repeatedly to put the knives down, but she refused. . . . Patrolman Tristao then sprayed his mace at the defendant. She turned her head and then came back out even more agitated. Patrolman Tristao sprayed again and this time the defendant was more affected by the spray and slammed the door. . . . At this point the defendant was in the kitchen and still agitated and yelling. The defendant came to the door and opened it. Patrolman Tristao and Patrolman [Jaeger] . . . were able to secure the defendant. . . .
. . . While the defendant was being taken into control she attempted several times to force her way out of the police officers['] hold. . . .
. . . .
The defendant is currently disabled and not employed. . . . She began receiving [S]ocial [S]ecurity disability in December of 2006. . . .
. . . [The defendant] states that she has a history of depression since the 1990's. In November of 2006[,] she was admitted to the Riverview Medical Center for five days for depression.
While noting defendant had presented "positive facts" in support of her application, the prosecutor found "the negative factors significantly outweigh the positive making the defendant an inappropriate candidate for PTI." The prosecutor gave three reasons for rejecting defendant's PTI application:
1.) [N.J.S.A.] 2C:43-12e(2) The facts of the case. The facts of this case show that the defendant's mother called the police because her daughter, the defendant was out of control and armed with a knife. . . . The defendant in this case armed herself with several knives and a meat cleaver and subsequently threatened five police officers. It took police time and effort to subdue the defendant who resisted arrest. Two police officers suffered minor injuries as a result.
2.) [N.J.S.A.] 2C:43-12e(4) The desire of the complainant or victim to forego prosecution. Sergeant [Cowan] has responded on behalf of the police officers involved and is opposed to the defendant's entry into PTI. He described this as one of the most stressful calls he has been on. . . . He and the other officers oppose PTI.
3.) [N.J.S.A.] 2C:43-12e(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or the possible injurious consequences of such behavior.
After learning her application was rejected, defendant provided the prosecutor with additional medical documentation and requested reconsideration of her application. The additional information included a letter from Dr. Sahar Kousa stating defendant was "being treated for Schizophrenia, a severe and persistent mental illness." Defendant also presented a letter from Dr. Fazal R. Panezai indicating she was suffering from "paranoid ideation requiring life long medications." In a letter dated July 18, 2007, the PTI prosecutor advised defendant's attorney that the additional medical information had been considered "in conjunction with the application and the entire file," but the State maintained "its original rejection of the defendant's application."
Pursuant to R. 3:28(h), defendant appealed the prosecutor's decision and the matter was heard by the trial court on August 3, 2007. Defendant's attorney argued the charges resulted from "an isolated event because Miss Hoffman has no prior criminal history whatsoever." He also explained defendant's "paranoia condition" caused her to believe "there were intruders in the house [and] she responded *914 by grabbing a meat cleaver and a knife." On the other hand, the prosecutor argued defendant created a "very[,] very dangerous situation," and it would be appropriate to have her "psychiatric status" monitored by the Monmouth County Probation Department. Following oral argument, the trial court found the prosecutor's decision "was a gross and patent abuse of discretion" because (1) the prosecutor "really didn't consider" defendant's mental illness, (2) the prosecutor relied too heavily on the "assaultive nature" of the offenses, and (3) the prosecutor placed "too much emphasis" on the wishes of the victims. The court's decision included the following:
The State argues that the police were called by the defendant's mother because she was out of control and armed with knives.
They further assert that the defendant threatened the police with knives and resisted arrest and, therefore, there were minor injuries.
. . . .
But, I think the prosecutor has not considered a lot of the other facts of the case here; and that is that this defendant is ill. . . .
. . . .
Also, the desire of the complainant to forgo prosecution, certainly the police have been upset. They claim they were upset. They claim they were stressed.
Being a policeman in and of itself is a stressful position.
So I don't think we can consider solely the fact that the complainant or the victims do not wish to forgo prosecution.
And the third, whether or not the crime is of an assaultive or violent nature.
. . . .
. . . [A]lthough [the prosecutor's office] sent a letter, stating that they considered the defendant's mental illness, they really didn't.
. . . .
They did not consider the facts of the case in their entirety and placed too much emphasis on the desire of the complainant to forgo prosecution and also that the crime was of an assaultive nature.
So I will find that this is a patent and gross abuse of discretion.
I will grant the motion and the defendant will be accepted into the PTI program.
PTI has been described as "a discretionary program diverting criminal defendants from formal prosecution." State v. Caliguiri, 158 N.J. 28, 35, 726 A.2d 912 (1999). The scope of judicial review of a decision to reject a PTI application is "severely limited." State v. Negran, 178 N.J. 73, 82, 835 A.2d 301 (2003). A defendant seeking to overcome rejection from PTI must "clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion." State v. Watkins, 390 N.J.Super. 302, 305, 915 A.2d 561 (App.Div.2007), aff'd, 193 N.J. 507, 940 A.2d 1173 (2008); see also State v. Wallace, 146 N.J. 576, 582-83, 684 A.2d 1355 (1996) ("A patent and gross abuse of discretion is more than just an abuse of discretion as traditionally conceived; it is a prosecutorial decision that has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.") (internal quotations omitted). In State v. Bender, 80 N.J. 84, 93, 402 A.2d 217 (1979) (citation omitted), the Court elaborated on the patent and gross abuse of discretion standard:
Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, *915 (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
Prosecutors are guided by a number of different principles when determining whether a defendant qualifies for PTI. For example, N.J.S.A. 2C:43-12(e) lists seventeen factors that prosecutors "shall consider in formulating their recommendation of an applicant's participation in a supervisory treatment program." Included among these factors is the "nature of the offense," N.J.S.A. 2C:43-12(e)(1), the "desire of the complainant or victim to forego prosecution," N.J.S.A. 2C:43-12(e)(4), and "[w]hether or not the crime is of an assaultive or violent nature," N.J.S.A. 2C:43-12(e)(10). Moreover, R. 3:28 provides eight "Guidelines," which prosecutors shall consider in determining whether PTI is appropriate. For instance, Guideline 3(i) states individuals who engage in crimes "deliberately committed with violence or threat of violence against another person . . . should generally be rejected."
"Although the Guidelines do represent a somewhat greater attempt to channel prosecutorial discretion than the statute, in the end it remains the responsibility of the prosecutor to weigh the various factors and to reach a determination." Wallace, supra, 146 N.J. at 586, 684 A.2d 1355. Thus, a prosecutor must use his or her independent judgment to fully and fairly evaluate the weight to be given to each of the relevant factors. See State v. Dalglish, 86 N.J. 503, 510-11, 432 A.2d 74 (1981) ("Individual PTI applications turn on an assessment of the defendant's background, the circumstances of his [or her] crime, the likely value of supervisory treatment, and the prosecutor's current enforcement policy."); see also Wallace, supra, 146 N.J. at 589-90, 684 A.2d 1355 ("A prosecutor has the prerogative to view seriously matters of domestic violence.").
Preliminarily, we note the record does not support the trial court's determination that the prosecutor's office "really didn't" consider defendant's mental illness. Generally, "it is presumed that the prosecutor considered all relevant factors before rendering a[PTI] decision." Dalglish, supra, 86 N.J. at 509, 432 A.2d 74; see also Bender, supra, 80 N.J. at 94, 402 A.2d 217 ("[U]nless and until a defendant demonstrates the contrary, our judges must presume that all relevant factors were considered and weighed prior to a prosecutorial veto."). Moreover, in the present matter, it is apparent from (1) the PTI rejection memorandum dated May 16, 2007, (2) the prosecutor's rejection letter after defendant submitted additional medical documentation, and (3) the prosecutor's comments during oral argument, that all of the relevant factorsincluding defendant's mental illnesswere considered and evaluated by the Monmouth County Prosecutor's Office prior to its PTI decision.
Because there was no failure to consider relevant factors, and defendant does not claim the prosecutor's decision was based on irrelevant or inappropriate factors, defendant has failed to satisfy her burden of demonstrating an abuse of discretion under the first two prongs of the Bender standard. We must therefore determine whether defendant satisfied the third prong by demonstrating the prosecutor committed "a clear error of judgment." The trial court reasoned the prosecutor's office abused its discretion by placing "too much emphasis" on the "assaultive nature" of the offenses and the wishes of the victims (who opposed defendant's PTI application). We disagree.
*916 The Supreme Court has defined "a clear error of judgment" as a decision "based on appropriate factors and rationally explained, but . . . contrary to the predominant views of others responsible for the administration of criminal justice." State v. Baynes, 148 N.J. 434, 444, 690 A.2d 594 (1997) (internal quotations omitted). In the present matter, defendant does not dispute she repeatedly threatened to kill the police officers while armed with a knife, or knives, in one hand and a meat cleaver in the other. Defendant also began cutting and stabbing a cardboard box while warning the officers she would do the same thing to them. Given these circumstances, the threat of violence was undoubtedly present and, in such cases, a "defendant's application should generally be rejected." R. 3:28, Guideline 3(i)(3); see also State v. Motley, 369 N.J.Super. 314, 321-22, 848 A.2d 875 (App. Div.2004) (finding trial court erred in admitting defendant, who was charged with third-degree possession of assault weapons, into PTI program over objection of Attorney General because of potential for violence and injury "associated with the maintenance of such weapons in an unsecured area").
Furthermore, we are convinced the victims' status as police officers does not eviscerate N.J.S.A. 2C:43-12(e)(4), which requires prosecutors to consider "[t]he desire of the complainant or victim to forego prosecution." Indeed, a prosecutor has the prerogative to view a potentially dangerous situation, such as this, as a serious matter and to weigh the victims' wishes accordingly. In this case, as in State v. Mirault, 92 N.J. 492, 499, 457 A.2d 455 (1983): "We discern no legislative intention to discount assault upon police officers as though it were something to be expected, a part of the game, so to speak." See also N.J.S.A. 2C:12-1(b)(5)(a) (simple assault on a police officer elevated to aggravated assault regardless of severity of injury); N.J.S.A. 2C:11-3(b)(2) (automatic life sentence without parole for murder of a law enforcement officer). Thus, it was entirely appropriate for the prosecutor to consider the wishes of the victims, notwithstanding their status as police officers, and we find no support in the record for the trial court's conclusion that "too much emphasis" was given to the victims' preference for prosecution rather than diversion.
A trial court does not evaluate a PTI application "as if it [stands] in the shoes of the prosecutor." Wallace, supra, 146 N.J. at 589, 684 A.2d 1355. And it cannot substitute its own judgment for that of the prosecutor even when "the prosecutor's decision is one which the trial court disagrees with or finds to be harsh." State v. Kraft, 265 N.J.Super. 106, 112-13, 625 A.2d 579 (App.Div.1993); see also State v. Nwobu, 139 N.J. 236, 254, 652 A.2d 1209 (1995) ("The question is not whether we agree or disagree with the prosecutor's decision, but whether the prosecutor's decision could not have been reasonably made upon weighing the relevant factors."). In the present matter, the prosecutor's reasons for rejecting defendant's application are consistent with the legislative standards applicable to PTI enrollment, with the PTI guidelines promulgated by the Court, and with judicial precedent regarding PTI admissions. Thus, the prosecutor's rejection of defendant's application was neither arbitrary nor unreasonable, and it certainly was not a clear error of judgment.
The order admitting defendant into PTI is reversed, and the matter is remanded for further proceedings consistent with this opinion.
SABATINO, J.A.D. (concurring).
I join the majority in reversing the Law Division's order admitting defendant into the PTI program, over the prosecutor's objection, because I agree that the record *917 does not bespeak a "patent and gross abuse of discretion" by the prosecutor. State v. Wallace, 146 N.J. 576, 582-83, 684 A.2d 1355 (1996). I write separately to make three additional points.
First, as a matter of sound practice, it would have been preferable for the assistant prosecutor to have provided some substantive commentary in her July 18, 2007 letter to defense counsel, after receiving the written reports from Dr. Kousa and Dr. Panezai confirming that defendant suffers from mental illnesses. The prosecutor's terse written response, asserting in pertinent part that "[t]he State . . . maintains its original rejection of the defendant's [PTI] application," was conclusory and uninformative. The prosecutor should have explained in her letter, at least briefly, why those expert diagnoses were inconsequential. See N.J.S.A. 2C:43-12(f) (the prosecutor must "precisely state his [or her] findings and conclusion which shall include the . . . reasons offered for the denial"); see also Wallace, 146 N.J. at 584, 684 A.2d 1355 ("the requirement that the prosecutor put his or her thought process on paper tends to protect against the consideration of inappropriate factors and promotes reasoned decision-making").
Such responsive commentary would have been particularly useful in this case, since the prosecutor's initial analysis in her May 16, 2007 memorandum had invoked PTI Guideline 3(i), which involves a state-of-mind element, i.e., whether the crime was "deliberately committed with violence or threat of violence." R. 3:28, Guideline 3(i) (emphasis added). The presence or absence of mental illness surely bears upon that state-of-mind assessment. Even so, I am satisfied that prosecutor's subsequent remarks at the oral argument before the motion judge, reflecting her appreciation of the mental health experts' findings, cures the shortcomings of her July 2007 follow-up letter.
Second, I wish to underscore that we were assured at oral argument that the Prosecutor's Office does not have a policy of automatically opposing PTI whenever it is requested to do so by victims who are police officers, and the record lacks proof of such a rigid approach. See State v. Imbriani, 291 N.J.Super. 171, 180, 677 A.2d 211 (App.Div.1996) ("lack of [the victim's] consent does not require a PTI rejection"); see also State v. Catlin, 215 N.J.Super. 471, 474, 521 A.2d 1385 (Law Div.1987). The absence of such a rigid policy fortifies our conclusion that the prosecutor did not abuse her authority in this case.
Lastly, I would point out that nothing in our disposition forecloses defendant from arguing at trial that she is not guilty by reason of insanity, N.J.S.A. 2C:4-1, or that she acted on the evening in question with a diminished mental capacity, N.J.S.A. 2C:4-2. This observation, while perhaps an obvious one, enhances at least my own sense that defendant has not been treated in an unjust manner.