**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5375-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DAWN A. PARKER,

      Defendant-Appellant.

_____

Submitted October 17, 2018 – Decided November 9, 2018

Before Judges Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-03-0657.

Joseph E. Krakora, Public Defender, attorney for appellant (Elizabeth C. Jarit, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Dawn A. Parker appeals from a June 16, 2017 order denying her application for admission into the Pretrial Intervention (PTI) program and a July 28, 2017 judgment of conviction sentencing her to three years of probation and requiring payment of restitution in the amount of $31,599.88, payable at the rate of fifty dollars per month. We affirm.

Defendant's conviction stemmed from her involvement in stealing insurance funds and opening a bank account. Defendant claimed her boyfriend stole a $102,719.54 insurance check and demanded she deposit the stolen check in a bank account. In return for participating in this plan, the boyfriend agreed to share the stolen funds with defendant.

On November 17, 2016, defendant opened a bank account at a local branch of Provident Bank (Bank). Defendant then deposited the stolen check into that account. Several days later, defendant made withdrawals, totaling $31,800.00, at different Bank locations. Suspecting fraud, the Bank froze the account. Defendant contacted the Bank on November 29, 2016, regarding the frozen account. The Bank advised defendant she had to appear, in person, to lift the hold on the account. When defendant arrived at the Bank, she was arrested and charged with one count of second-degree theft by deception, N.J.S.A. 2C:20-4(a), and five counts of third-degree forgery, N.J.S.A. 2C:21-1(a)(1).

After she was charged, defendant filed an application for PTI. The prosecutor denied defendant's request for PTI, and defendant appealed to the Superior Court. The judge upheld the prosecutor's denial of defendant's admission to PTI. Defendant then pled guilty to two counts of forgery. She was sentenced to three years of probation and ordered to pay $31,599.88 in restitution, payable fifty dollars monthly.

On appeal, defendant raises the following points:

POINT I

THE PROSECUTOR'S REJECTION OF MS. PARKER'S PTI APPLICATION CONSTITUTES A PATENT AND GROSS ABUSE OF DISCRETION.

A. Consideration of a dismissed municipal offense and pending misdemeanor charges in finding factors 9 and 12 violated State v. K.S.; contrary to the State's position, these factors weigh in favor of admission.

B. Contrary to the prosecutor's letter, the [B]ank's statement that it did not object to the defendant's entry into PTI supported factor 4 and weighs in favor of admission.

C. The State's recommendation of probation and the Court's finding of sentencing mitigating factor 10 demonstrates that PTI factors 5, 6, 14, and 17 all support Ms. Parker's application.

D. Full and proper consideration of Ms. Parker's application demonstrates compelling reasons to

3

overcome the presumption against admission and that denial of entry subverts the goals of PTI.

POINT II

THE RESTITUTION ORDER REQUIRING MS. PARKER TO PAY $31,599.88 FOR 52 YEARS AND 8 MONTHS IS MANIFESTLY EXCESSIVE.

POINT III

RESENTENCING IS REQUIRED BECAUSE THE COURT INCORRECTLY REJECTED MITIGATING FACTOR 4 AND FAILED TO PROVIDE A STATEMENT OF REASONS FOR FINDING AGGRAVATING FACTOR 3.

Our scope of review of a PTI denial is "severely limited." State v. Negran, 178 N.J. 73, 82 (2003). We afford significant deference to a prosecutor's decision regarding PTI. State v. Wallace, 146 N.J. 576, 589 (1996). A "[d]efendant generally has a heavy burden when seeking to overcome a prosecutorial denial of his [or her] admission into PTI." State v. Watkins, 193 N.J. 507, 520 (2008). The decision whether to admit a defendant to a PTI program is "'primarily individualistic in nature' and a prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation." State v. Nwobu, 139 N.J. 236, 255 (1995) (quoting State v. Sutton, 80 N.J. 110, 119 (1979)).

To overturn a prosecutor's rejection of an application for PTI, a defendant must "clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion." State v. Hoffman, 399 N.J. Super. 207, 213 (App. Div. 2008) (internal quotations omitted). An abuse of prosecutorial discretion is established when a defendant demonstrates

> that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment[.] In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying [PTI].
>
> [State v. Roseman, 221 N.J. 611, 625 (2015).]

Having reviewed the record, the prosecutor's rejection of defendant's PTI application did not constitute a patent and gross abuse of discretion. We review each of the applicable factors regarding defendant's PTI request.

We first consider factor nine, "[t]he applicant's record of criminal and penal violations and the extent to which she may present a substantial danger to others," N.J.S.A. 2C:43-12(e)(9), and factor twelve, "[t]he history of the use of physical violence towards others." N.J.S.A. 2C:43-12(e)(12). These factors examine a defendant's prior dismissed charges and arrests. Our Supreme Court has held the "[u]se of prior dismissed charges alone as evidence of a history of

A-5375-16T4

and propensity for violence or a pattern of anti-social behavior, where defendant's culpability or other facts germane to admission into [PTI] have not been established in some way, constitutes an impermissible inference of guilt." State v. K.S., 220 N.J. 190, 202 (2015).

Here, defendant was previously arrested for simple assault in connection with a domestic violence incident, and the charge was dismissed. That dismissed charge was not considered in evaluating defendant's admission in PTI. However, after her arrest in this case, defendant was arrested in Pennsylvania and charged with "Terroristic Threats and Use or Possession of an Electrical Incapacitating Device." The prosecutor relied on the pending Pennsylvania arrest to determine defendant has a propensity toward violence, satisfying factors nine and twelve. The PTI judge upheld the determination, finding "the State is not referencing the prior dismissals, but rather the pending Pennsylvania matter. So it's a permissible reference under K.S."

Next is factor four, "[t]he desire of the complainant or the victim to forego prosecution," N.J.S.A. 2C:43-12(e)(4). Defendant argues the Bank did not oppose her entry into PTI. However, the Bank did not oppose PTI conditioned on defendant's payment of restitution in the full amount. The Bank even suggested the imposition of restitution in "[sixty] equal payments of $526.66."

6

In rejecting factor four, the prosecutor determined, "the branch manager at the . . . Bank has continued to cooperate with the State in its prosecution of the case." The prosecutor deemed the "continued cooperation" on the part of the Bank was not a statement "to forego prosecution." The judge upheld the State's determination on this factor, finding this matter was "not a private dispute between [the Bank] and defendant." The judge concluded preserving the "integrity of the financial system" for the benefit of the general public was paramount.

Factor five is the existence of personal problems and character traits which may be addressed through services provided by supervisory treatment, N.J.S.A. 2C:43-12(e)(5), and factor six is the likelihood that the applicant's crime is related to a situation that could be conducive to change through supervisory treatment, N.J.S.A. 2C:43-12 (6). In arguing the prosecutor should have considered factors five and six, defendant asserts a probationary sentence is functionally the same as PTI. Since the State recommended a probationary sentence, defendant claims the State should have granted defendant's PTI application. Defendant contends, "[i]t is incongruous that in the probationary context, the defendant possesses sufficient potential for rehabilitation, but that she somehow lacks the potential to succeed in PTI."

Defendant's assertion that a probationary sentence and PTI are equivalent is flawed. While probation and PTI involve supervision and rehabilitation of a defendant, a probationary sentence results in a conviction. Consequently, the violation of a probationary sentence carries more serious consequences than a violation of PTI. Thus, a probationary sentence presents a stronger deterrent effect against future criminal conduct than PTI.

Defendant also asserts the prosecutor "completely failed to consider any of the factors concerning [defendant's] amenability to supervisory treatment," we disagree. The prosecutor expressly considered factor fourteen, "[w]hether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution," N.J.S.A. 2C:43-12(e)(14), and factor seventeen, "[w]hether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program," N.J.S.A. 2C:43-12(e)(17).

In considering factors fourteen and seventeen, the prosecutor determined there was a "strong need for deterrence" in this case, which would not "be accomplished by admitting the defendant into a minimally supervised short-term program and then dismissing her case." The PTI judge found the prosecutor's determination was "particularly within the purview of the State," and chose to

not disturb this finding. Regarding factor seventeen, the judge again deferred to the prosecutor, stating the harm to society in abandoning prosecution of detention for this serious crime did not outweigh the benefits to society from "channeling an offender into supervisory treatment." In this case, defendant will receive supervisory treatment, but it will be through probation rather than PTI.

Based on the foregoing, the PTI judge concluded the prosecutor considered all of the relevant factors in rejecting defendant's PTI application and found the denial of PTI was not a patent and gross abuse of discretion.

In reviewing a denial of PTI, we note there is a presumption of incarceration for second-degree offenders, which may not be overcome except in "'truly extraordinary and unanticipated circumstances' . . . [where] 'a serious injustice' exists." Nwobu, 139 N.J. at 252 (quoting State v. Roth, 95 N.J. 334, 358 (1984)). A defendant may rebut the presumption by "showing compelling reasons justifying the applicant's admission and establishing that a decision against enrollment would be arbitrary and unreasonable." Guidelines for Operation of Pretrial Intervention in New Jersey, Pressler & Verniero, Current N.J. Court Rules, Guideline 3(i)(4) to R. 3:28 (2018). If a defendant "fails to

rebut the presumption against diversion," then "[r]ejection based solely on the nature of the offense is appropriate." State v. Caliguiri, 158 N.J. 28, 43 (1999).

Because defendant was charged with second-degree theft by deception, she offers the following "compelling reasons" to overcome the presumption of incarceration. Specifically, defendant states she is a single mother with a young child, she has no prior record, and the stigma of a criminal record will prevent her from working as a security guard. These reasons do not constitute "truly extraordinary and unanticipated circumstances" of "a serious injustice." Nwobu, 139 N.J. at 252.

Contrary to defendant's argument, she has a prior record. Defendant was arrested and charged in Pennsylvania with a violent crime, involving a stun gun. Moreover, defendant worked as a security guard for one month, but has a two year college background and certification in medical billing and coding, affording her other job options. Further, many defendants are single parents raising children. Having reviewed the record, we are satisfied the prosecutor considered defendant's personal circumstances and determined defendant failed to overcome the presumption against admission to PTI given the nature of the offense in this case.

We next review defendant's argument that restitution, imposed as part of the judgment of conviction, is manifestly excessive. Pursuant to N.J.S.A. 2C:44-2(c)(2), in setting restitution, a court "shall take into account all financial resources of the defendant, including the defendant's likely future earnings, and shall set the amount of restitution so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay." A defendant will be required to pay restitution if: "(1) the victim . . . suffered a loss; and (2) [t]he defendant is able to pay or, given a fair opportunity, will be able to pay restitution." N.J.S.A. 2C:44-2(b).

Here, prior to the sentencing hearing, defendant's counsel advised defendant was willing to pay the full restitution amount of $31,599.88 in monthly installments of fifty dollars. The trial judge acknowledged he had the discretion to limit the installment amount, but declined to do so because he was "somewhat optimistic in [defendant's] prospects," and set the payment of restitution at fifty dollars per month. The judge did so because defendant, in her plea agreement and during the sentencing hearing, indicated she was able to pay that amount. The judge also required periodic reviews of defendant's ability to pay, allowing for the monthly payment to be modified if defendant's ability to pay changed in the future.

11

We discern no basis to disturb the amount defendant is required to pay toward restitution. The sum is the amount defendant and her counsel stated she was able to pay. Given defendant's two years of college and training in medical coding and billing, defendant has the ability to fund the agreed upon monthly restitution payment.

We next consider defendant's argument regarding the sentencing judge's application of the mitigating and aggravating factors. Defendant contends mitigating factor four was improperly rejected by the judge, and the judge's finding of aggravating factor three lacked a requisite statement of reasons.

Our review of a sentencing decision is "narrow" and "governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We may modify a defendant's sentence if the judge was "clearly mistaken." State v. L.V., 410 N.J. Super. 90, 107 (App. Div. 2009) (internal citation omitted). Courts must consider aggravating and mitigating factors so long as they are supported by credible evidence. Id. at 108.

Mitigating factor four provides, "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense." N.J.S.A. 2C:44-1(b)(4). As a domestic violence survivor, defendant argues her conduct should be excused because she believed participating in this

crime would free her, emotionally and financially, from her abusive boyfriend. The judge disagreed, determining, "[a] desire to become financially independent is not a mitigation . . . [it] is a motive to commit a financial crime, which happened here."

There is not enough evidence in the record for us to conclude the judge should have applied mitigating factor four. Defendant claims her boyfriend pressured her to participate in this crime. However, the only evidence submitted in support of her claim is defendant's own statement, which is insufficient to find the judge abused his discretion or was "clearly mistaken." L.V., 410 N.J. Super. at 107.

A trial judge must provide reasons for imposing a particular sentence. See State v. Case, 220 N.J. 49, 65 (2014) (holding in order to "facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence."); State v. Fuentes, 217 N.J. 57, 74 (2014) ("the court must 'state reasons for imposing [a] sentence[.]'") (quoting R. 3:21-4(g)). However, a sentence will be upheld if it is "possible in the context of [the] record to extrapolate without great difficulty the court's reasoning . . . [and] does not shock the judicial conscience." State v. Pillot, 115 N.J. 558, 566 (1989).

Defendant asserts the judge failed to provide a statement of reasons for applying aggravating factor three. In applying aggravating factor three, the trial judge determined, "I find aggravating factor[ ] [three] . . . need to deter a risk of future criminality . . . there is a need for specific deterrence here, and there certainly is a general deterrence factor that applies."

Based on the record, we can "extrapolate without great difficulty," the judge's reasoning regarding application of aggravating factor three. This case presented a sophisticated crime, involving a significant sum of money, that was well-planned between defendant and her boyfriend over the course of many weeks. It was not a stretch for the judge to find a need to deter such crimes in the future because of the carefully considered and deliberate nature of defendant's criminal conduct. The application of this aggravating factor, based on this record, does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5375-16T4