# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1463-20

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KURT T. HARRIS,

    Defendant-Respondent.

_____

> Argued October 20, 2021 – Decided November 19, 2021
>
> Before Judges Hoffman, Geiger and Susswein.
>
> On appeal before the Superior Court of New Jersey, Law Division, Middlesex County, Accusation No. 18-07-0571.
>
> Patrick F. Galdieri, II, Assistant Prosecutor, argued the cause for appellant (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, of counsel and on the brief).
>
> Joseph M. Mazraani argued the cause for respondent (Mazraani & Liguori, LLP, attorneys; Joseph M. Mazraani, of counsel and on the brief).

PER CURIAM

The State appeals the trial court's order admitting defendant to Pre-Trial Intervention (PTI), diverting defendant from prosecution for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), and fourth-degree possession of hollow-nose bullets, N.J.S.A. 2C:39-3(f)(1). This is the second time we have been tasked with reviewing the trial court's decision to admit defendant to PTI over the prosecutor's objection. In our prior ruling, we held that the trial court misapplied the patent-and-gross-abuse-of-discretion standard of review by substituting its own judgment for that of the prosecutor. State v. Harris, No. A-0202-19 (App. Div. Mar. 31, 2020) (slip op. at 4). We determined that the prosecutor's only error was in failing to properly analyze two of the seventeen PTI factors. Ibid. We therefore remanded for the prosecutor to reevaluate those two factors. Ibid.

The prosecutor complied with our remand instructions, re-evaluated those two factors, and determined that those re-weighed factors did not change the prosecutor's overall conclusion that PTI was inappropriate. The trial court rendered a lengthy opinion—substantially similar to its original written opinion—ruling once again that the prosecutor had committed a patent and gross abuse of discretion in applying and weighing all of the relevant PTI factors. After carefully reviewing the updated record in light of the governing legal

A-1463-20

principles, we conclude that the trial court has once again substituted its own judgment for the prosecutor's in weighing the factors militating for and against admission to PTI. Because the prosecutor on remand did not commit a patent and gross abuse of discretion in rejecting defendant's application, we now vacate the trial court's latest order and remand with instructions for the trial court to enter an order denying defendant's admission to PTI.

I.

At the risk of repeating large portions of our prior opinion, we recount the facts and procedural history leading to this second appeal. On June 1, 2018, defendant was driving from Dunmore, Pennsylvania to Seaside Heights, New Jersey with his girlfriend. The record indicates that defendant and his girlfriend intended to visit the beach, but it is unclear whether they intended to visit other attractions in New Jersey.

Police pulled over defendant on Route 18 in Middlesex County for motor vehicle violations, including improper lane changes and failing to wear a seatbelt. Defendant appeared nervous and was touching his waistband. The police then asked defendant to step out of his vehicle.

Defendant was asked if he had any items on him that would "stick or poke" the officer. Defendant answered "no," but informed the officer that a weapon

A-1463-20

was "clipped" to his belt. The officer then secured a gun that was loaded with a round in the chamber.

Defendant provided the officer with a valid Pennsylvania license to carry a concealed firearm. The officer informed defendant that it was a violation of New Jersey law to carry the weapon in this State without a New Jersey permit. Defendant explained that he did not intend to violate our gun laws. It is not disputed that defendant has no criminal history and no prior contacts with the adult criminal or juvenile justice systems, either in this State or in Pennsylvania. He is by all accounts a law abiding and hardworking individual who has two jobs, working for a landscaping company and as a restaurant bartender and cook.

Defendant subsequently applied to PTI, and the Criminal Division Manager recommended that he be admitted to the program. In August 2018, the prosecutor submitted its initial statement of reasons explaining why the State would not consent to PTI. Defendant filed an appeal to the Law Division challenging the prosecutor's rejection. After hearing oral argument, the trial court reserved decision and ordered the parties to return to court for another hearing in January 2019. At that hearing, the trial court asked the State to reconsider its decision to deny PTI. The First Assistant Prosecutor replied by letter on January 15, 2019, explaining that he had reviewed the matter and that

4

he concurred with the reasons and conclusion set forth in the State's initial rejection letter.

In February 2019, the court convened another hearing at which the court again asked the State to reconsider its decision. Eleven days later, the State responded to that request, re-affirming that it would not consent to PTI. On September 9, 2019, the court issued a twenty-six-page written decision admitting defendant to PTI over the State's objection. The State appealed from that decision.

We reversed the trial judge's ruling, noting that "the prosecutor's office acted within the ambit of its discretion in analyzing and weighing the relevant PTI factors." Harris, slip op. at 4. We agreed with the trial court, however, that the prosecutor had misapplied two of the seventeen PTI factors: factor five, N.J.S.A. 2C:43-12(e)(5) ("The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment") and factor six, N.J.S.A. 2C:43-12(e)(6) ("The likelihood that the applicant's crime is related to

a condition or situation that would be conducive to change through his participation in supervisory treatment").

We deemed it appropriate to remand "the matter for the prosecutor to decide whether a proper application of these two PTI factors would lead the prosecutor to reach a different outcome." Ibid.; see State v. Johnson, 238 N.J. 119, 129 (2019) (noting that when a defendant shows that the prosecutor erred in considering certain PTI factors, a reviewing court may remand the matter to the prosecutor; however, unless a reviewing court finds "a patent and gross abuse of discretion," such remand is not an order admitting a defendant into PTI, but rather an opportunity for the prosecutor to "rightly reconsider the application").

On May 13, 2020, in response to our remand instructions, the prosecutor issued a second letter explaining the reasons for its decision to again reject defendant's admission to PTI. That second letter re-evaluated and re-weighed the two PTI factors that we specified in our prior decision.

Defendant appealed the rejection to the trial court. On January 22, 2021, the trial court admitted defendant to PTI over the State's objection. On February 2, 2021, the trial court issued its order, and on February 3, 2021, issued a thirty-two-page written opinion. On that same day, the State filed the present appeal.

6

II.

As in our prior opinion, we begin our analysis by acknowledging the legal principles governing this appeal, focusing intently on the deference we owe, not to the trial court, but rather to the prosecutor when deciding whether to divert prosecution by admission to PTI.  See State v. Nicholson, 451 N.J. Super. 534, 553 (App. Div. 2017) (citing State v. Waters, 439 N.J. Super. 215, 226 (App. Div. 2015)) (noting appellate courts review a trial court's decision on a PTI application de novo).

"PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'"  Johnson, 238 N.J. at 127 (quoting State v. Roseman, 221 N.J. 611, 621 (2015)).  As the Court explained:

> PTI is essentially an extension of the charging decision, therefore the decision to grant or deny PTI is a quintessentially prosecutorial function.  As a result, the prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference.  A court reviewing a prosecutor's decision to deny PTI may overturn that decision only if the defendant clearly and convincingly establishes the decision was a patent and gross abuse of discretion.
>
> [Id. at 128–29 (citations and quotations omitted).]

The contours of the abuse of discretion standard are well-defined, as is the heightened requirement that such an abuse of discretion be patent and gross.

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [Id. at 129.]

A prosecutor's exercise of his or her discretion is guided by the criteria set forth by the Legislature. If a prosecutor elects to deny a PTI application, the prosecutor must provide a statement of reasons explaining the basis for that decision. N.J.S.A. 2C:43-12(e). The statement of reasons must consider the following enumerated factors:

> (1) The nature of the offense;
>
> (2) The facts of the case;
>
> (3) The motivation and age of the defendant;
>
> (4) The desire of the complainant or victim to forego prosecution;
>
> (5) The existence of personal problems and character traits which may be related to the applicant's crime and

A-1463-20

for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;

(6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment;

(7) The needs and interests of the victim and society;

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

(9) The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others;

(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) The history of the use of physical violence toward others;

(13) Any involvement of the applicant with organized crime;

(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

A-1463-20

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and

(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

[N.J.S.A. 2C:43-12(e)(1)–(17).]

The prosecutor's statement of reasons, moreover, "must demonstrate that the prosecutor has carefully considered the facts in light of the relevant law." State v. Wallace, 146 N.J. 576, 584 (1996). It is not sufficient for the prosecutor merely to "parrot[] the statutory language, and present[] bare assertions regarding [the defendant's] amenability to PTI." Roseman, 221 N.J. at 627. "[P]rosecutors…must make an individualized assessment of the defendant, taking into account all relevant factors." State v. K.S., 220 N.J. 190, 202 (2015) (citing State v. Watkins, 193 N.J. 507, 520 (2015)). This does not mean, however, that the "prosecutor must provide a defendant with a detailed report outlining every step taken en route to his [or her] decision." State v. Sutton, 80 N.J. 110, 117 (1979).

Importantly for purposes of this case, a court reviewing a prosecutor's denial of PTI "cannot substitute its own judgment for that of the prosecutor." State v. Hoffman, 399 N.J. Super. 207, 216 (App. Div. 2008); see also State v. Kraft, 265 N.J. Super. 106, 112–13 (App. Div. 1993) (alterations in original) (quoting State v. Von Smith, 177 N.J. Super. 203, 208 (App. Div. 1980)) (observing "that 'a trial [court] does not have the authority in PTI matters to substitute [its own] discretion for that of the prosecutor'"). In State v. Lee, we sustained the prosecutor's rejection of the defendant's application to PTI, noting that the prosecutor's analysis was "sufficiently cogent and grounded in the facts and the applicable PTI standards to be upheld, even though reasonable minds might differ as to whether defendant is a suitable candidate for admission into the program." 437 N.J. Super. 555, 569 (App. Div. 2014).

III.

We next focus our attention on the two PTI factors that we found in our prior opinion to have been improperly addressed by the prosecutor. We consider each of these factors in turn by summarizing what the prosecutor originally decided, why that initial analysis was misguided or inadequate, and what the prosecutor did on remand in response to our prior opinion.

11

## A.

As we have noted, factor five addresses "the existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment." N.J.S.A. 2C:43-12(e)(5). It is not disputed that defendant does not appear to have any such personal problems or character traits relating to the alleged offense that need to be addressed by any form of treatment or rehabilitative services. The prosecutor initially determined that the absence of any such personal problems or character traits militated against admission to PTI. We noted in our prior opinion that, "[i]n support of this conclusion, the prosecutor relied on the doctrine that ignorance of the law is not a defense." Harris, slip op. at 20. We agreed with the trial court that this "general principle of criminal culpability…is inapposite to [a] factor five analysis," and we therefore concluded that factor five did not "militate against diversion as the prosecutor found." Id. at 20–21.

On remand, the prosecutor reevaluated factor five in view of our prior decision and concluded:

Based on all the pertinent information concerning defendant's PTI application, there is no indication that his crimes were related to any "personal problems" or "character traits" for which services are unavailable in the criminal-justice system. Nor is there any indication that defendant's crimes were related to any such problems or traits that would benefit from the supervisory treatment afforded in PTI. Of course, then, in the context of this factor, PTI's supervisory treatment would be no more effective than the services available in the criminal-justice system. Accordingly, the State finds that this factor weighs neither for nor against defendant's admission into PTI.

The trial court rejected the prosecutor's conclusion that this factor was neutral, reasoning that defendant was "perfectly capable of possessing and controlling a firearm as verified by the Pennsylvania authorities" and that there was no indication "that PTI would be ill-equipped in any way to supervise this law-abiding citizen …who maintains full time employment and is working his way towards graduating college." The trial court also found that the prosecution was mistaken in its analysis, reasoning that "if the defendant did suffer from 'personal problems' or 'character traits' resulting in misconduct which required services or treatment, supervision through PTI cannot be disqualified as an option."

We disagree with the trial court's analysis and conclude the prosecution did not abuse its discretion in finding that factor five neither supported nor

13

weighed against defendant's suitability for PTI. The trial court acknowledged that "the State correctly recognize[d] that there are no 'personal problems' or 'character traits' this defendant suffers from which require any treatment." In these circumstances—where no treatment is needed—we do not see how supervisory treatment provided through the PTI program could be said to be more or less effective than services available through the criminal justice system following a criminal prosecution. Cf. K.S., 220 N.J. at 202–03 (recognizing that mental health issues would be an appropriate consideration when evaluating a PTI application).

In short, absent "personal problems and character traits which may be related to the applicant's crime," this statutory PTI factor is inapposite and inapplicable. Therefore, the prosecution did not err, much less patently and grossly abuse its discretion by deciding that this factor neither militated for nor against admission to PTI.

B.

We turn next to factor six—"[t]he likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment." N.J.S.A. 2C:43-12(e)(6). The prosecutor had initially concluded that factor six neither weighed in favor nor

against defendant's application because he did not have an alcohol or drug problem.  Harris, slip op. at 21.  In rejecting that conclusion, we held that factor six was not "necessarily limited to a personal 'condition' such as substance abuse.  Rather, the applicant's crime in this case appears to be related to a 'situation' that might be conducive to change through PTI, namely, defendant's ignorance of New Jersey's gun laws."  Ibid.

On remand, the prosecution reevaluated factor six, concluding,

> Defendant's crimes do appear, however, to be related to a "situation"—his ignorance of New Jersey's gun laws—that would be conducive to change through PTI's supervisory treatment.  This case surely has made defendant aware of those laws.  His participation in supervisory treatment would reinforce that awareness and curtail the risk of him reoffending as a result of this situation.  Thus, this factor supports his diversion, but the State affords it minimal weight.

In reevaluating factor six, the prosecutor followed our guidance and found that it favored the defendant's application.  The trial court nonetheless disagreed with the amount of weight the prosecutor accorded to this factor, remarking that factor six "has to favor the defendant without being modified."  We see no abuse of discretion, much less a patent and gross abuse, in the prosecutor's decision to give only slight weight to this factor.  As we noted in our prior opinion, "there is no mathematical formula that guides the exercise of prosecutorial discretion."

15

<u>Harris</u>, slip op. at 11.  And as our Supreme Court made clear in <u>Wallace</u>, the Legislature "intended to leave the weighing process to the prosecutor."  146 N.J. at 585–86; <u>see also</u> <u>Harris</u>, slip op. at 22 (noting a reviewing court may not supplant "the prosecutor's primacy in determining how much weight, if any, to ascribe to these factors").

## IV.

The trial court in its second opinion painstakingly examined every PTI factor, essentially repeating much of its original analysis that we had rejected in our prior opinion.  We do not mean to suggest that the prosecutor's reevaluation of factors five and six—as required by our remand order—could be done in isolation from the prosecutor's overall assessment of defendant's suitability for PTI.  After reevaluating factors five and six, it was necessary for the prosecutor to determine whether the revised weight accorded to those two factors would change the outcome, and that required the new findings regarding factors five and six to be considered in the context of the combined weight the prosecutor had assigned to all other PTI factors.  Prosecutors and reviewing courts, in other words, must consider the totality of the factors, that is, the sum of the weights accorded to all factors.  A change to the weight assigned to any one factor,

A-1463-20

therefore, necessarily impacts the overall calculus, recognizing, of course, there is no precise mathematical formula. See Harris, slip op. at 11.

But that self-evident proposition did not invite the trial court to revisit the prosecutor's evaluation and weight accorded to the other factors that we previously determined were properly considered by the prosecutor. Indeed, our prior opinion made clear that aside from the misapplication of factors five and six, "the prosecutor's office acted within the ambit of its discretion in weighing the relevant PTI factors." Harris, slip op. at 4. That determination was not subject to second-guessing by the trial court. Accordingly, the only issues before the trial court on remand were (1) whether the prosecution patently and grossly abused its discretion in reevaluating and assigning weight to factors five and six, and (2) whether the prosecution patently and grossly abused its discretion in determining that the new weight assessments for those two factors were insufficient to change the prosecutor's overall weighing of the totality of relevant factors.

This case boils down to, in other words, the weighing of the relevant PTI factors. As we have noted both in this opinion and in our prior opinion, a reviewing court may not supplant "the prosecutor's primacy in determining how much weight, if any, to ascribe to these factors." Id. at 22; see Wallace, 146

17

N.J. at 585–86 (reaffirming that the weighing process is left to the prosecutor, not the trial court). We are satisfied the prosecutor did not commit a patent and gross abuse of discretion in weighing the factors on remand, and we are constrained therefore to conclude that the trial court once again substituted its own judgment for the judgment of the prosecutor. See Hoffman, 399 N.J. Super. at 216.

V.

We would be remiss if we failed to note that the trial court in its second written opinion addressed at length concerns regarding the state of policing in New Jersey and throughout the nation. In particular, the trial court focused its commentary on the lack of trust many citizens, and especially minority citizens, have in the fairness and impartiality of police officers. Those comments were offered in the context of explaining why defendant may not have volunteered that he was carrying a loaded handgun at the outset of the motor vehicle stop— a circumstance the State cited as support for its opposition to PTI for defendant in accordance with a memorandum issued by the Attorney General. See Attorney General, Clarification of the "Graves Act" 2008 Directive[1] with

_____

[1] Attorney General, Attorney General Directive to Ensure Uniform Enforcement of the "Graves Act" (Oct. 23, 2008, as corrected Nov. 25, 2008) (2008 Attorney General Directive).

A-1463-20

Respect to Offenses Committed by Out-of-State Visitors From States Where Their Gun-Possession Conduct Would Have Been Lawful 7 (Sept. 24, 2014) (2014 Attorney General Clarification or Attorney General memorandum). Specifically, the memorandum offers prosecutors guidance for PTI determinations involving out-of-state visitors. Consideration is given to individuals who inadvertently violate New Jersey gun laws but are in lawful compliance with their home jurisdiction's gun laws. Id. at 1. Specifically, the trial court commented,

> Today, many officers like the ones in this case go about their business in [a] professional fashion. However, we are long past the days when the norm is citizens exercising any sort of control to initiate dialogue with police officers, as equal parties to an event, during a police-citizen encounter. This remains especially true when that encounter is centered around a motor vehicle stop and a gun is present, even if the gun is lawfully owned and licensed by the motorist. The media, if nothing else, has illustrated for years now how there is nothing routine and normal about those encounters as they are often driven by chance, controlled by fate, and influenced by the diversity of the parties to the encounter or the environment within which they take place. Furthermore, with what is now perceived to be the ongoing militarization of law enforcement on all levels, compliance with an officer's request can be realistically born out of fear in lieu of respect, with heightened anxiety and awareness of surroundings now replacing the comfort levels and feelings of safety once routinely associated with these types of encounters.

19

The trial court further remarked,

> We have also come to experience, in many
> communities, police viewing themselves as the
> embodiment of law and authority where even minimal
> assertions by word or conduct are subject to being
> interpreted as impeding of the administration of law or,
> in the worst[-]case scenario, resistance. Too often they
> are misinterpreted as challenges to police authority that
> become grounds for violence unnecessarily introduced
> as a responsive measure to regain control of the
> encounter. The cases of Philando Castile, Samuel
> DuBose, and Jonny Gammage (i.e., motor vehicle stops
> gone fatally wrong) serve as examples of this and of
> how times have changed. As represented in this case,
> the presence of police officers seemed to have triggered
> a level of psychological intimidation, pressure[,] and
> anxiety experienced by this defendant who, through his
> conduct, seemed incapable of knowing when was the
> right time to tell the officers about the firearm he was
> carrying, in addition to what was the appropriate means
> by which to do so. Failing to comply with the officer's
> verbal commands could have been interpreted as verbal
> non-compliance, subsequently raising the level of this
> encounter to one of control and restraint and where the
> defendant's actions could have been judged by the
> officers within the parameters of resistance. When
> viewed from the lens that in many instances police now
> seem to perceive themselves as law enforcers as
> opposed to peace-keepers, the manner in which the
> civilian population responds to them is no longer static
> but, instead, now guided by an infinite number of
> variables. In the worst[-]case scenario, a response by a
> motorist could result in the imposition of social order
> by force of arms regardless of how unjust or
> humiliating that social order may be, rather than a
> response filtered through a level of calm and civility
> while the police-citizen encounter is concluded. This

20

remains especially true where the individual makes any attempt during an encounter to reach for a weapon simply to retrieve same and turn it over to the officers for safekeeping. Based on this, I must find that it most certainly is an error in judgement by the State, and conceivably one bearing classist undertones, that no consideration was given to the actualities of these encounters and that consistent with the Attorney General's Clarifying memorandum preference is given in favor of PTI admission to an individual for being overtly outspoken so as to initiate a dialogue with an officer during a police-citizen encounter rather than to one who submits to, and is guided by, the officer's exercise over the encounter who then, in doing so, stays safely within the parameters set by the officers as they direct the encounter towards its conclusion.

We wish to make clear that we in no way fault the trial court for using its written opinion in this case to express concerns regarding the strained relations between many police departments and officers and the communities they serve and protect. These are important matters concerning our criminal justice system that judges would do well to keep in mind when deciding a wide range of issues arising in criminal cases. We note, however, that in this instance, we remanded the case solely to require the prosecutor to reevaluate its initial decision with respect to PTI factors five and six. We expressly held in our prior opinion that the prosecution did not abuse its discretion in the manner in which it considered and weighed the other relevant factors and circumstances, including the nature

of the offense, N.J.S.A. 2C:43-12(e)(1), and the facts of the case, N.J.S.A. 2C:43-12(e)(2).

We appreciate that the trial court earnestly believes that defendant—who by all accounts has led a law-abiding life—should be afforded the opportunity to avoid the stigma and other consequences of a criminal conviction.[2] But under our current PTI framework, that decision rests within the discretion of the prosecutor, subject only to limited judicial review for a patent and gross abuse of prosecutorial discretion. While we might not have arrived at the same conclusion that the prosecutor reached were it our decision to make in the first instance, see Lee, 437 N.J. Super. at 560 (recognizing reasonable minds might differ on whether a defendant is a suitable candidate for PTI), we are constrained to apply the law as it stands and afford substantial deference to the prosecutor. We therefore reverse the trial court's order admitting defendant to PTI and direct that the trial court issue an order denying defendant's application.

---

[2] We were advised at oral argument that the prosecutor has tendered a plea offer whereby in exchange for defendant's guilty plea, the State will file a motion pursuant to N.J.S.A. 2C:43-6.2 to waive the forty-two-month period of parole ineligibility that applies to a Graves Act offense, and also will recommend that defendant be sentenced to noncustodial probation.

A-1463-20

## VI.

Finally, we address the State's request that we assign a new judge to the case. We decline to do so. "[T]he appellate court has the authority to direct that a different judge consider the matter on remand in order to preserve the appearance of a fair and unprejudiced hearing, although such authority is ordinarily exercised sparingly." Pressler & Verniero, Current N.J. Court Rules, cmt. 4(d) on R. 1:12-1 (2022); see also N.J. Div. of Youth and Fam. Serv. v. A.W., 103 N.J. 591, 617–18 (1986) (noting a new judge may be appropriate in situations where evidence has already been heard and the court is committed to its findings).

The record shows that throughout the pendency of this case, the trial court has repeatedly expressed its belief that PTI is warranted. Because we are remanding with instructions that the trial court enter an order denying defendant's application for PTI, there will be no further opportunity, however, for the trial court to express its views on defendant's suitability for PTI. Accordingly, there is no need to have the case handled by another judge.

A-1463-20

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1463-20