STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. TERRY
VON SMITH, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 29, 1980—Decided October 9, 1980.

Before Judges ALLCORN, KOLE and PRESSLER.

*James B. Daniels*, Assistant Deputy Public Defender, argued the cause for appellant (*Stanley C. Van Ness*, Public Defender, attorney; *Susan Slovak*, Assistant Deputy Public Defender, of counsel and on the letter brief).

*Emily L. Gosnell*, Deputy Attorney General, argued the cause for respondent (*John J. Degnan*, Attorney General, attorney).

The opinion of the court was delivered by

PRESSLER, J. A. D.

We have before us on this appeal a criminal conviction which we are constrained to reverse as a matter of fundamental justice. The core issues here arise out of the administration of a county pretrial intervention program (PTI) during its developmental period and prior both to the adoption of the PTI Guidelines by the Supreme Court in September 1976 and to the explication, clarification and refinement of the program afford-

ed by the Supreme Court in *State v. Leonardis (Leonardis I)*, 71 *N.J.* 85 (1976), and *State v. Leonardis (Leonardis II)*, 73 *N.J.* 360 (1977). Indeed, the PTI events here involved commenced even before the extensive April 1974 amendment of *R.* 3:28, and hence at a time when that rule's authorization for diversionary programs was still in the initial and rudimentary form of its original 1970 adoption. We, therefore, regard the problems now before us as largely attributable to the then frontier stage of PTI.[1]

An indictment was returned in November 1973 against defendant Terry Von Smith, then 19 years old and without a prior criminal record, charging him with a variety of offenses arising out of a single armed robbery. He applied for admission to the Hudson County diversionary program in December 1973. That application was not acted on for some six months because of an initial disagreement between the program director, who believed that Von Smith was an eminently suitable candidate for the program, and the county prosecutor, who was reluctant to consent because of the serious nature of the crime. Following the prosecutor's initial rejection of the application, however, a new program director was appointed, who concurred in his predecessor's evaluation and was ultimately successful in procuring the prosecutor's agreement to admit defendant to the program. His admission to the program was formally accomplished by court order entered in June 1974 approving defendant's enrollment therein for a period of three months. Although the April 1974 revision of *R.* 3:28 permits an initial enrollment of six

---

[1]As is hereafter made clear, defendant, at least during the time of his program participation, was suffering from serious mental illness diagnosed as paranoid schizophrenia. Since such illness is not ordinarily amenable to any short-term treatment, it is likely that the admission to PTI of persons suffering therefrom would be precluded by Guideline I(d), the official comment to which makes clear that persons who require extensive psychotherapy are ordinarily not suitable PTI candidates in view of the time constraints of PTI. Had this defendant's initial application been submitted after promulgation of the Guidelines, it is highly probable that his need for extensive psychotherapy would have dictated its rejection.

months (*R.* 3:28(b)), the earlier version of the rule had permitted enrollment for an initial period of only three months, and we assume that in ordering enrollment of the defendant for the lesser period, the judge was simply unaware of the then recent rule change and had not intended to curtail the initial permissible period of defendant's program participation. Thus, according to that first order, defendant's situation was required to have been reviewed by the court in September 1974. For reasons which remain unexplained that review did not take place until April 1975, some eight months later, when, on recommendation of the program director, concurred in by the prosecutor, a different judge continued defendant's enrollment for an additional three-month period, terminating on July 24, 1975.

The program director submitted a report to the prosecutor on July 7, 1975, recommending dismissal of the 1973 indictment based on his conclusion that defendant had successfully completed the program. The prosecutor then gave his written consent, albeit reluctantly, to the dismissal. The truncated record before us does not indicate what, if anything, transpired procedurally between July 1975, when the final report was submitted, and March 1976, when the program director formally petitioned the court in the presence of the prosecutor and defendant for dismissal of the indictment and defendant's discharge from the criminal process. It is, however, clear that that hearing took place almost 2½ years following both the return of the indictment and defendant's actual participation in the program, which dated from the filing of his original application for admission thereto, and some 21 months following his formal enrollment therein.

The judge who presided at the March 1976 hearing entered an order denying the petition to dismiss the indictment, terminating defendant's participation in the program, and returning him to the criminal process. Defendant's motion to this court for leave to appeal that order was denied, and he was ultimately tried and convicted of the armed robbery in December 1978 by a different judge sitting without a jury. The prison sentence then

imposed upon him was suspended and he was placed on five years' probation.

On this appeal defendant again urges, among other challenges to the conviction,[2] that the March 1976 order returning him to the criminal process was improvidently entered and that he was then entitled to dismissal of the indictment. We agree with this contention, having the benefit, which the trial judge did not, of the development of the law governing PTI in the intervening 4½ years. We reach our conclusion based on the record before the trial judge and with full appreciation of the reasons for his action.

The representations made to the trial judge by the program director at the March 1976 hearing regarding defendant's personal situation and program participation since December 1973 were and continue to be unchallenged. In short, defendant actively participated in the program from December 1973 until at least the date of the hearing, regularly attending a variety of counselling and therapy sessions and being employed in a janitorial capacity at the program offices for an extended period of time. He had not engaged in any further criminal activity during this period. The legitimate concern of the trial judge, despite these highly favorable circumstances, centered about defendant's obviously severe psychiatric problems. Shortly after his program admission defendant had been diagnosed as sufferng from paranoid schizophrenia and he had been institutionalized in Trenton State Hospital in February 1975 following an acute toxic psychosis due to what is described as an LSD flashback. Following his release from Trenton State Hospital after a week's confinement there, he attended after-care outpatient therapy sessions at two different mental health clinics in addition to his other counseling sessions.

---

[2]Defendant attempted to raise additional challenges in a supplementary brief that he submitted shortly before argument. That brief was stricken by us since no leave was sought and the supplemental brief raised no issue not subject to more timely presentation.

In dealing with the program director's dismissal recommendation the concern expressed by the trial judge was the continued threat to public safety posed by defendant—not by reason of any criminal tendency or propensity on his part but rather by reason of his mental illness. In that posture the judge's expressed inclination would have been to continue defendant's PTI participation. He recognized, however, that such a disposition was foreclosed because of the provisions of R. 3:28(b) and (c)(2) which prohibit continued program participation beyond one six-month extension of an initial six-month enrollment. He conceived, therefore, of the options then open to him, as being limited either to dismissal of the indictment and the consequent discharge of defendant from the supervisory alternatives available through the criminal justice system or the termination of PTI and the further prosecution of the indictment. Recognizing that neither of these choices was really satisfactory, he opted nevertheless for the second, articulating the view that he had the full discretion to do so despite the prosecutor's consent to the dismissal.

We are satisfied that the trial judge erred in electing not to dismiss the indictment. First, as Leonardis (I) and (II), supra, reinforced by State v. Hermann, 80 N.J. 122 (1979), subsequently made clear, a trial judge does not have the authority in PTI matters to substitute his discretion for that of the prosecutor. The initial discretion to admit to the program and to terminate enrollment rests with the prosecutor, and it is only when the trial judge is satisfied that that discretion has been grossly and patiently abused that he may overrule the prosecutorial decision. Clearly, the standard of gross and patent abuse of discretion must apply to all dispositive prosecutorial decisions in respect of PTI, and just as clearly, the determination respecting an ultimate disposition of the indictment following the maximum permitted enrollment period constitutes such a dispositive decision. The State does not argue the contrary. Thus, while we appreciate the prosecutor's reluctance in having consented to the program director's recommendation, we are never-

theless satisfied that it was a decision fairly reached on the facts then available and in consideration of the relevant circumstances. Since that decision patently did not constitute an irrational or unconsidered or unjustifiable conclusion, it cannot be regarded as having constituted an abuse of discretion subject to judicial correction. We are furthermore satisfied that under these circumstances the prosecutor's consent, while clearly reluctant, was not, however, as the State now contends, either uninformed or lacking in the requisites of a "true" consent.

There are, however, other and perhaps more significant reasons for our conclusion that the indictment should have been dismissed at the March 1976 hearing. The first of these relates to defendant's personal situation. We have no doubt that his history of mental illness, particularly during the period of his program participation, raised disquieting and genuine questions as to the danger he might constitute to himself or to others if he were returned to the community without the imposition of any restraining or therapeutic supervision. It was that concern alone, moreover, which expressly motivated the judge's decision, rather than any perception by him of defendant's need for further rehabilitation *vis-à-vis* either deterrence from any future criminal activity or control of any discernible criminal trait or propensity. Thus, considering the time that had elapsed from the date of defendant's initial program enrollment, his genuine efforts to comply with all of its requirements and the total absence of any further criminal behavior, we are satisfied that the return of defendant to the criminal process for the exclusive purpose of insuring his continued participation in outpatient mental health therapy was inappropriate. The trial judge's wholly legitimate objective could have been completely and effectively achieved within the confines of a civil commitment proceeding in which the fact of defendant's continued danger to himself or the community could have been properly established, if that were indeed the fact, and any necessary and appropriate noninstitutional supervision and therapy could have been required. See *R.* 4:74–7. Indeed, the prosecutor himself, of his

own volition or on court order, could have commenced the appropriate civil commitment proceedings. See *N.J.S.A.* 30:4–27.

Our point is simply in the context of this case and in view of the totality of circumstances before the trial judge in March 1976, we regard it as fundamentally unfair for the public interest to have been served by subjecting defendant to the further penalties of the criminal process rather than by resorting to the available technique of civil proceedings. In reaching this conclusion we rely as well on our perception that one of the motivating purposes of the one-year maximum period for program enrollment mandated by *R.* 3:28 is to insure that in respect of defendants who do not achieve requisite rehabilitation during their program participation, the ultimate trial of the charges will not be unduly delayed. We regard that provision of *R.* 3:28, therefore, as deferring the constitutional requirement of a speedy trial for a maximum one-year period of program participation. Thus, the court's refusal here to dismiss the indictment, in view of the time periods then involved, did unduly in fact protract defendant's opportunity for a reasonably prompt trial, in contravention of the rule. His trial, as it turned out, did not take place for more than five years after the date of the indictment, a time period which, insofar as we can determine from this record, is largely attributable to his cooperative participation in the PTI program.

We were advised at oral argument that defendant still has not, since the return of the indictment in 1973, been involved in any criminal behavior at all. It was further represented to us that he has recently moved to California where his uneventful probation continues to be supervised by the authorities in that state. We are thus satisfied that all of the competing interests here involved are now best served by the dismissal of the indictment. The prosecutor, should he so desire and should his perception of the demands of the public interest so persuade him, is always free to initiate a civil commitment proceeding. At this point, almost seven uneventful years removed from the

date of the indictment, we regard the prosecutor's continuing opportunity to so do as fully protective of the public interest.

The judgment of conviction is reversed. The indictment is dismissed.