**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0202-19T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KURT T. HARRIS,

    Defendant-Respondent.

_____

Submitted February 24, 2020 – Decided  March 31, 2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Accusation No. 18-07-0571.

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for appellant (Patrick F. Galdieri, II, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Mazaraani & Liguori, LLP, attorneys for respondent (Joseph M. Mazraani, of counsel; Jeffrey S. Farmer, of counsel and on the brief).

PER CURIAM

The State appeals from a trial court order admitting defendant, Kurt T. Harris, to Pre-Trial Intervention (PTI) over the prosecutor's objection. Defendant was arrested and charged with unlawful possession of a loaded handgun police discovered on him during a motor vehicle stop. Defendant is a Pennsylvania resident who has a permit to carry a concealed firearm in that state. He asserts he was unaware that it was illegal for him to carry his firearm while in New Jersey.

The second-degree handgun crime with which defendant is charged under N.J.S.A. 2C:39-5(b)(1) carries a mandatory term of imprisonment with a parole ineligibility period of 42 months. N.J.S.A. 2C:43-6(c). The mandatory minimum sentence may be reduced, or waived altogether, on motion of the prosecutor pursuant to N.J.S.A. 2C:43-6.2. Furthermore, defendant is not categorically ineligible for PTI by reason of the prescribed mandatory minimum sentence. The PTI decision, rather, must be based on a case-by-case analysis of seventeen factors that are set forth in N.J.S.A. 2C:43-12(e). An Attorney General directive also provides guidance to prosecutors on how to exercise their discretion when deciding whether to consent to PTI for an out-of-state visitor who unlawfully possesses a firearm in circumstances that would have been lawful in the defendant's own state. Attorney General Directive, "Clarification

of 'Graves Act' 2008 Directive with Respect to Offenses Committed by Out-of-State Visitors From States Where Their Gun-Possession Conduct Would Have Been Lawful" (Sept. 24, 2014) (2014 Clarification).

The prosecutor considered the statutory PTI factors and rejected defendant's PTI application for reasons explained in an eight-page single-spaced letter. The prosecutor's statement of reasons addresses all of the PTI factors and does not simply parrot them. The trial judge issued a thorough twenty-six-page opinion that dissects how the prosecutor applied the PTI factors in view of the 2014 Clarification. The trial judge found that the prosecutor misapplied the 2014 Clarification, giving too much weight to certain offense-oriented factors that weigh against PTI and not enough weight to offender-oriented factors that weigh in favor of PTI. After considering the circumstances of the offense in view of defendant's personal history, the trial court concluded that the prosecutor's rejection of PTI amounted to a gross and patent abuse of prosecutorial discretion.

We have reviewed the record in view of the governing legal principles and conclude that the trial judge did not accord the prosecutor's PTI decision sufficient deference. We recognize that reasonable minds can differ on whether defendant should be admitted to PTI. Although the trial court explained that it

was not substituting its judgment for that of the prosecutor, we are constrained to conclude that, for all practical purposes, the court did just that. In particular, the court substituted its judgment with respect to the prosecutor's assessment of the nature of the offense, N.J.S.A. 2C:43-12(e)(1), and the facts of the case, N.J.S.A. 2C:43-12(e)(2).

We believe that the prosecutor's office acted within the ambit of its discretion in analyzing and weighing the relevant PTI factors. However, we agree with the trial court that the prosecutor misapplied two of the seventeen PTI factors. We deem those errors to constitute an abuse of discretion but not a gross and patent abuse sufficient to overturn the prosecutor's decision and order PTI. Given the deference we owe to the prosecutor's charging discretion, we remand the matter for the prosecutor to decide whether a proper application of these two PTI factors would lead the prosecutor to reach a different outcome.

## I.

In June 2018, defendant was arrested by an East Brunswick police officer and charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), and fourth-degree possession of hollow-nose bullets, N.J.S.A. 2C:39-3(f)(1). After agreeing to being charged by means of accusation rather

4

than indictment, defendant applied to PTI. The Criminal Division Manager reviewed the matter and recommended that defendant be admitted to PTI.

In August 2018, the prosecutor submitted a statement of reasons explaining why the State would not agree to PTI. Defendant filed an appeal to the Law Division challenging the rejection. After hearing oral argument, the trial court reserved decision and ordered the parties to return to court for another hearing in January 2019. At that hearing, the trial judge asked the State to reconsider its decision to deny PTI. The First Assistant Prosecutor replied by letter on January 15, 2019 explaining that he had reviewed the matter and that he concurred with the reasons and conclusion set forth in the State's initial rejection letter.

In February 2019, the court convened another hearing at which the court once again asked the State to reconsider its decision. Eleven days later, the State responded that it would not consent to PTI. On September 9, 2019, the court issued its written decision admitting defendant to PTI over the State's objection. The State appeals from that decision.

II.

We briefly summarize the relevant facts, which we glean from the trial court's opinion and our review of the record. On the morning of Friday, June 1,

A-0202-19T3

2018, defendant was driving with his girlfriend from Dunmore, Pennsylvania to the shore resort town of Seaside Heights, New Jersey. The record shows defendant indicated to police he was "travelling to Seaside Heights for the day with his girlfriend to go to the beach," but it is unclear whether they intended to visit other Seaside Heights attractions, such as the boardwalk, restaurants, or bars.

Defendant was pulled over by police on Route 18 in Middlesex County for a motor vehicle violation. Defendant appeared nervous and was touching his waistband. An officer directed defendant to step out of the car. As the officer was preparing to conduct a pat down for weapons, the officer asked defendant if he had any items on him that would "stick or poke" the officer. Defendant answered "no," but informed the officer that a weapon was "clipped" to his belt.[1] The officer secured the handgun. The gun was loaded and had a round in the chamber.

Defendant produced a valid Pennsylvania license to carry a concealed firearm. Defendant told the officers that he was unaware that it was unlawful for him to carry the weapon into New Jersey, and he did not intend to violate

---

[1] The record is not clear as to whether the handgun was in holster. The record is also unclear on whether the firearm was kept inside or outside defendant's pants.

A-0202-19T3

our gun laws. Defendant has no criminal history and no prior contacts with the adult criminal or juvenile justice systems in either this State or in Pennsylvania. He is by all accounts a law abiding and hardworking individual who has two jobs. He is employed by a landscaping company and also works for a restaurant as a bartender and cook.

## III.

We begin our analysis by acknowledging the legal principles that govern judicial review of a prosecutor's PTI decision. Those principles were recently summarized by our Supreme Court in State v. Johnson, 238 N.J. 119 (2019). "PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" Id. at 127 (quoting State v. Roseman, 221 N.J. 611, 621 (2015)). As the Court explained:

> PTI is essentially an extension of the charging decision, therefore the decision to grant or deny PTI is a "quintessentially prosecutorial function." As a result, the prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference. A court reviewing a prosecutor's decision to deny PTI may overturn that decision only if the defendant "clearly and convincingly" establishes the decision was a "patent and gross abuse of discretion."
>
> [Id. at 128–29 (citations omitted).]

The contours of the abuse of discretion standard are well-defined, as is the heightened requirement that such an abuse of discretion be patent and gross.

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [Id. at 129.]

The prosecutor's exercise of his or her discretion is guided by the criteria set forth by the Legislature. If a prosecutor elects to deny a PTI application, the prosecutor must provide a statement of reasons explaining the basis for that decision. N.J.S.A. 2C:43-12(e). The statement of reasons must consider the following enumerated factors:

> (1) The nature of the offense;
>
> (2) The facts of the case;
>
> (3) The motivation and age of the defendant;
>
> (4) The desire of the complainant or victim to forego prosecution;
>
> (5) The existence of personal problems and character traits which may be related to the applicant's crime and

8

for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;

(6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment;

(7) The needs and interests of the victim and society;

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

(9) The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others;

(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) The history of the use of physical violence toward others;

(13) Any involvement of the applicant with organized crime;

(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

A-0202-19T3

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and

(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

[N.J.S.A. 2C:43-12(e)(1) to (17).]

The prosecutor's statement of reasons, moreover, "must demonstrate that the prosecutor has carefully considered the facts in light of the relevant law." State v. Wallace, 146 N.J. 576, 584 (1996). It is not sufficient for the prosecutor merely to "parrot[] the statutory language, and present[] bare assertions regarding [the defendant's] amenability to PTI." State v. Roseman, 221 N.J. 611, 627 (2015).

Importantly for purposes of the case before us, a court reviewing a prosecutor's denial of PTI "cannot substitute its own judgment for that of the prosecutor." State v. Hoffman, 399 N.J. Super. 207, 216 (App. Div. 2008); see also State v. Kraft, 265 N.J. Super. 106, 112–13 (App. Div. 1993) (observing "that 'a trial [court] does not have the authority in PTI matters to substitute [its

own] discretion for that of the prosecutor'" (alterations in original) (quoting State v. Von Smith, 177 N.J. Super. 203, 208 (App. Div. 1980))). In State v. Lee, we sustained the prosecutor's rejection of the defendant's application to PTI, noting that the prosecutor's analysis was "sufficiently cogent and grounded in the facts and the applicable PTI standards to be upheld, even though reasonable minds might differ as to whether defendant is a suitable candidate for admission into the program." 437 N.J. Super. 555, 569 (App. Div. 2014).

IV.

We next apply these legal principles to the case before us. We begin by making a few general observations. As the trial court aptly noted, there is no mathematical formula that guides the exercise of prosecutorial discretion.[2] The weighing of the PTI factors militating for and against PTI is a qualitative process incapable of empirical quantification. The decision is not made simply by comparing the number of factors favoring admission against the number of

[2] The Office of the Attorney General itself acknowledges that the prosecutor's discretion in deciding whether to admit a defendant into PTI is not channeled with "mathematical" precision. 2014 Clarification at 8. This stands in notable contrast to the prosecutor's discretion in waiving or reducing mandatory minimum terms of parole ineligibility under the Comprehensive Drug Reform Act pursuant to N.J.S.A. 2C:35-12. Cf. Revised Attorney General Guidelines for Negotiating Cases under N.J.S.A. 2C:35-12 (July 15, 2004) (prescribing periods of parole ineligibility based on the combined number of points ascribed to specifically-defined aggravating and mitigating factors).

factors militating against admission. Rather, the prosecutor must ascribe weight to the relevant factors and balance them accordingly.

The divergent opinions expressed by the prosecutor and the trial judge reflect a fundamental disagreement concerning the weight to ascribe to specific factors. Notably, they disagree how to weigh the alleged offense conduct against the factors that focus on the character and background of the defendant. The prosecutor placed greater emphasis than the judge on the risk to public and officer safety posed by the offense conduct. The judge, in contrast, placed greater emphasis than the prosecutor on defendant's clean record, his amenability to rehabilitation, and the low risk that he might commit a future offense.

Although the State ultimately placed greater weight on the offense-oriented PTI factors, it did not disregard defendant's personal history. The prosecutor, in other words, did not "categorically" deny PTI based on the seriousness of the crime. See State v. Caliguiri, 158 N.J. 28, 39 (1999), superseded by statute, N.J.S.A. 2C:35-7(b), as recognized in Johnson, 238 N.J. at 123 ("The nature of the PTI program suggests that categorical rejections must be disfavored."). Rather, the prosecutor concluded ultimately that the applicable offense-oriented PTI factors outweighed the offender-oriented factors.

## IV.

In reaching its conclusion to overturn the prosecutor's decision, the trial judge noted that, "the court cannot disregard the Attorney General's Graves Act Directive dictating that people with licenses to carry in other states should be treated with some leniency in New Jersey under certain circumstances." We have reviewed the record and conclude that while the guidance to prosecutors given by the Attorney General would certainly allow defendant to be admitted to PTI, that guidance does not require the prosecutor to consent to PTI in this case.

The 2014 Clarification instructs the prosecutor to consider, among other things, whether, "[t]he manner and circumstances of the possession minimized the exposure of the firearm to others in this State, thereby reducing the risk of harm." 2014 Clarification at 6. The "minimal exposure" section of the 2014 Clarification "accounts for the likelihood that persons in New Jersey would be exposed to the dangers posed by the presence of the unlawfully[ ]possessed firearm by focusing on the weapon's accessibility while the defendant would be interacting with other persons in this State." Ibid.

In this instance, the .40 caliber handgun was clipped to defendant's waistband and was loaded with a round already in the chamber. The loaded

13

condition of the firearm is an aggravating circumstance under the 2014 Clarification, which notes, "[a]n unloaded firearm presents a less immediate risk to persons with whom the defendant might interact." Ibid. The 2014 Clarification also instructs prosecutors to consider whether a defendant "carried, or planned or was likely to carry, the firearm on or about his person outside a vehicle." Ibid. The weapon in this case was immediately accessible and could be fired in an instant.

The trial court discounted the risk found by the prosecutor, noting "[the prosecutor] does not present any facts that would support the inference that the Defendant ever intended to draw or use the weapon." The risk to public safety posed by immediate accessibility, however, does not require a premeditated intention to use the weapon. Cf. N.J.S.A. 2C:39-4 (defining the separate and distinct offense of possession of a firearm with a purpose to use it unlawfully). Immediate accessibility by carrying a loaded firearm on one's person affords greater opportunity to use the weapon in anger in response to a spontaneous provocation. In contrast, having to spend time to retrieve a firearm from a secure location, such as a car trunk, provides an opportunity for tempers to cool in the event of an unplanned confrontation.

A-0202-19T3

We add that the concern for public safety that arises from carrying a firearm on one's person is not based solely on the risk that the armed person might draw or use the weapon. The New Jersey laws that prohibit persons from carrying a handgun in public also account for the risk that others, including police officers, might become aware of a concealed weapon and be alarmed, precipitating a response that could escalate quickly to an unintended but foreseeable tragedy.

The trial court also undervalued the risk defendant's conduct posed when it noted that "defendant never reached his destination and only exited his vehicle at the request of police. No New Jersey citizens were exposed to the firearm. The likelihood of potential future exposure remains speculative." We believe this conclusion misconstrues the 2014 Clarification's consideration of the exposure of the firearm to persons in New Jersey. It is certainly true that the chances of further exposure in this case were effectively mitigated once police arrested defendant and seized the unlawfully possessed handgun. Presumably, however, such mitigation would always have occurred given that an application for PTI presupposes an arrest and the filing of formal charges. The Directive thus clearly focuses on the risk to the public that would have been posed had defendant not been interdicted by police.

A-0202-19T3

In this instance, defendant was not "traveling through New Jersey on an interstate highway with few if any stops." 2014 Clarification at 6.[3] Rather, defendant was en route to a presumably crowded shore town where there would be ample opportunity to interact with other persons.

We appreciate that the risk assessment contemplated by the 2014 Clarification necessarily entails speculation. That is inherent in any attempt to predict the future. It is certainly possible, for example, that upon arriving at Seaside Heights, defendant would have unloaded the weapon and locked it in the trunk of his car, thereby minimizing the exposure to other persons in this State. But it is also conceivable that he would have followed his home-state

---

[3] This provision of the 2014 Clarification explains:

> This [minimal exposure] factor . . . accounts for the nature and circumstances of the defendant's travel into this State, and the period(s) of time during which the unlawfully[ ]possessed firearm would present a risk to anyone in New Jersey. For example, traveling through New Jersey on an interstate highway with few if any stops presents less danger than a more protracted visit, or multiple visits, where it is likely that the defendant will be interacting with non-motorists in this State.
>
> [2014 Clarification at 6 (emphasis added).]

A-0202-19T3

practice of carrying it on his person after exiting the car.[4]  After all, defendant seeks leniency from the Graves Act because he was unfamiliar with New Jersey law and was complying with the law of Pennsylvania.  Given that he is permitted to carry a concealed weapon on his person in his home state, it is not unreasonable to infer that he would have followed that same practice throughout his visit to New Jersey.

The record also shows that defendant did not advise police he was carrying a weapon in his waistband at the outset of the motor vehicle stop.  He did so only after he had been ordered out of the car and was facing an imminent frisk that would have revealed the weapon.  That suggests the possibility that he might not have alerted the officers that he was armed had he not been ordered out of the car based on his nervousness and furtive movements.[5]  We do not mean to

---

[4] We acknowledge that it might be reasonable to speculate on defendant's behalf that he would not have carried a .40 caliber handgun on his person while wearing a bathing suit on the beach.  On the other side of the scales, it would be just as reasonable to speculate that given the substantial distance between Seaside Heights and his home near Scranton, Pennsylvania—roughly 180 miles— defendant and his girlfriend would have participated in recreational activities at the Jersey shore besides sunbathing.  In that event, he might have carried the weapon on his person while more fully clothed on the boardwalk or at a restaurant, bar, or nightclub.

[5] The 2014 Clarification provides in pertinent part:

suggest that the timing of the disclosure is an aggravating circumstance under the 2014 Clarification. However, the manner in which defendant disclosed the firearm is not the strongest possible mitigating circumstance described in the 2014 Clarification.

The point, simply, is that the 2014 Clarification refers to situations that present a stronger case for PTI than the circumstances presented in this case (e.g., a motorist passing through New Jersey with no planned or likely interaction with others in this State who has an unloaded firearm that is not being carried on his person and who volunteers the presence of the weapon to police without prompting). In sum, we believe the 2014 Clarification neither forecloses nor foreordains PTI in the circumstances of this case.

V.

Just as defendant cannot be categorically denied PTI based on the seriousness of the offense, he is not categorically entitled to PTI based on his

---

> While admitting to the presence of a firearm in response to a police question (e.g., "is there anything in the car I should know about?") is a mitigating circumstance, volunteering information about the firearm to police without being prompted to do so is an especially important mitigating factor . . . .
>
> [2014 Clarification at 7.]

A-0202-19T3

spotless personal record.  The PTI decision, ultimately, requires consideration of both the offense and the offender.  It bears emphasis, moreover, that no one disputes that imprisonment would be inappropriate in this case.  The prosecutor, defendant, and trial judge all agree that prosecutorial leniency is warranted. The dispute relates to the degree of leniency that should be extended by the prosecutor.  Should defendant be afforded an opportunity to avoid having a criminal conviction on his permanent record,[6] or is it a sufficient expression of leniency that he avoids having to serve any time in jail or prison?[7]

We are convinced that there is no metaphysically right or wrong answer to these questions.  Nor are the answers dictated by statute, case law, court rule, or the guidance to prosecutors issued by the Attorney General.  The question presents a judgment call where, as we have noted, reasonable people can disagree.  Accordingly, we do not believe that defendant has established a gross

---

[6]  Because the firearm offense is graded as a second-degree crime, before defendant can be admitted to PTI, he must enter a guilty plea.  N.J.S.A. 2C:43-12(g)(3)(a).  Upon successful competition of the program of supervisory treatment, the charges would be dismissed.  N.J.S.A. 2C:43-12(g)(3).

[7]  Under N.J.S.A. 2C:43-6.2, the mandatory sentence can be avoided only upon a prosecutor's motion made to the assignment judge.

and patent abuse of prosecutorial discretion that warrants admitting defendant to PTI over the prosecutor's objection.

That said, the prosecutor's application of two of the seventeen PTI factors are cause for concern and need to be addressed. We note, as did the trial court, that the prosecutor appears to have misapplied factor five relating to the existence of personal problems and character traits for which services are not available within the criminal justice system.[8] The prosecutor acknowledged that defendant does not appear to have any such conditions and concluded that this circumstance "supports prosecution," i.e., weighs against PTI. In support of this conclusion, the prosecutor relied on the doctrine that ignorance of the law is not a defense.

We agree with the trial court that this general principle of criminal culpability, see N.J.S.A. 2C:2-4 (discussing the general principle of ignorance

---

[8] This factor provides in its entirety:

> The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment.
>
> [N.J.S.A. 2C:43-12(e)(5).]

or mistake of law), is inapposite to factor five analysis. We therefore believe that factor five does not militate against diversion as the prosecutor found. We offer no opinion as to the weight, if any, to accord this factor other than that it does not weigh against PTI.

Relatedly, we agree with the trial court that the prosecutor misapplied factor six, "[t]he likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment." N.J.S.A. 2C:43-12(e)(6). The prosecutor concluded that defendant did not have a drug or alcohol problem and therefore determined this factor was neutral, neither supporting diversion or traditional prosecution. However, we do not view this factor as necessarily limited to a personal "condition" such as substance abuse. Rather, the applicant's crime in this case appears to be related to a "situation" that might be conducive to change through PTI, namely, defendant's ignorance of New Jersey's gun laws. We offer no opinion on the positive weight, if any, to be accorded this factor.

We believe that the prosecutor's application of these two factors constitutes a clear error of judgment, albeit one that does not rise to the level of gross and patent abuse of discretion. Viewed in the context of the other PTI

factors, we do not hold that the prosecutor's misapplication of factors five and six subverts the goals underlying PTI. Johnson, 238 N.J. at 129.

Although a significant amount of time has already passed since defendant was arrested and charged, and at the risk of imposing further delay in resolving the diversion decision, we deem it to be appropriate to remand the case to afford the prosecutor the opportunity to reevaluate the overall balancing of factors after properly accounting for factors five and six. See Johnson, 238 N.J. at 132 (remanding "to the prosecutor for a fresh review of the defendant's [PTI] application"). We do so without supplanting the prosecutor's primacy in determining how much weight, if any, to ascribe to these factors, and ultimately, in determining whether PTI is appropriate considering all relevant circumstances.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22                                        A-0202-19T3