**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1727-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RONALD M. IGLESIAS,

      Defendant-Appellant.

_____

> Argued October 28, 2020 – Decided June 28, 2021
>
> Before Judges Sumners and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Accusation No. 14-04-0315.
>
> James H. Maynard argued the cause for appellant.
>
> Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Acting Morris County Prosecutor, attorney; Tiffany M. Russo, on the brief).

PER CURIAM

Defendant Ronald M. Iglesias appeals from a November 13, 2019 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We conclude that, if proven, defendant's trial counsel's erroneous advice that he was categorically ineligible for the Pre-Trial Intervention (PTI) program was constitutionally deficient. We therefore reverse and remand for an evidentiary hearing. If a hearing substantiates the allegation, defendant shall be afforded the opportunity to withdraw his plea and apply for PTI.

Defendant, then twenty-four years old, resided with his parents and sister in Bayonne. Defendant, who graduated from New Jersey City University with a bachelor's degree is a professional musician who travels nationally and internationally to perform. Defendant has no history of substance abuse and no significant prior adult or juvenile criminal record.[1] Defendant was also pursuing a master's degree in music at New Jersey City University.

On May 12, 2013, an officer from the Chatham Township Police Department found defendant, disrobed, in his car with a minor who was attempting to hide in the backseat. Defendant was arrested, and the minor provided a statement to police that he met defendant "who took him first to an area where they engaged in some kissing," and then into defendant's vehicle in

---

[1] Defendant only has three local ordinance violations spanning from 2009 to 2012.

A-1727-19

an "isolated area and engaged in sexual activity." Although the minor was unable to consent to sexual contact, he characterized the encounter as "consensual," and denied that defendant used any force or coercion.

On or about May 13, 2013, a complaint was issued for defendant's arrest stemming from this incident. Defendant was charged with second-degree sexual assault of a victim between the ages of thirteen and sixteen when the actor was four or more years older than the victim, N.J.S.A. 2C:14-2(c)(4), and third-degree endangering, abuse, neglect, or sexual act by a non-caretaker, N.J.S.A. 2C:24-4(a). On or about May 21, 2013, another complaint was issued that charged defendant with an additional count of second-degree sexual assault of a victim between the ages of thirteen and sixteen when the actor was four or more years older than the victim, and an additional count of third-degree endangering, abuse, neglect, or sexual act by a non-caretaker.

On April 7, 2014, under Accusation No. 14-04-315,[2] defendant pled guilty to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b). In exchange, the State agreed to dismiss the remaining counts in the complaints. The State also agreed to recommend probation with up to 180 days in county jail, and

_____

[2] The accusation form is absent from the record.

compliance with the requirements set forth in Megan's Law, N.J.S.A. 2C:7-1 to
-23.

A sentencing hearing was conducted on May 23, 2014. Defendant made
the following statement:

> I'm really and truly sorry for . . . any pain that I caused
> for the victim and the victim's family.
>
> I[t] was . . . beyond [a] stupid mistake on my part.
> For everything I've cost my parents, my family, [the]
> embarrassment, and just the pain.
>
> I wish I could go back. I was just in a very bad
> place and my judgment was completely off. I really and
> truly am remorseful for what I did.
>
> And there's not a day that goes by that I'm not
> reminded of it in some way, that it's changed my life in
> a very significant way, in a very bad way.
>
> I really and truly am very remorseful for . . . what
> I've done to the victim, and the victim's family, and my
> family, anyone who is affected by it.

The victim wrote an email in support of defendant's character:

> I was not hurt nor damaged by the events. I
> wasn't . . . in the situation unwillingly, nor was I in the
> situation unenthusiastically.
>
> [Defendant] is not a danger to society, nor is he a
> sexual predator. He isn't a criminal. Please take into
> account the fact that . . . I was there completely at my
> own . . . whim[.]

4

Society is not in danger and the tax dollars should not be wasted on incarcerating [defendant]. It is my wish that [defendant] walks out of this whole situation without having served any jail time or prison time.

I understand that [defendant's] record cannot have the felony removed, but if there was a way for that to happen, too, that would be the most preferred option.

The victim's mother also provided a statement expressing similar sentiments:

From my perspective as [the victim's] parent, I would not have pressed charges. And my son, [the victim], is fine. No harm has come to him. I believe a lesson has been learned by all parties.

I do not believe justice would be served for [defendant] to spend time in jail or to have a felony charge on his record. I don't believe additional punishment is warranted. There is no benefit to be gained.

The State conceded that there was "no allegation of force" and acknowledged that "this was a one-time incident." The judge observed that defendant expressed remorse for his actions and, in fact, the pre-sentence report indicated his remorse was sincere. Indeed, the pre-sentence report highlighted that defendant was "embarrassed" and "remorseful," and that it appeared "extremely unlikely that this defendant will have future contact with the criminal justice system."

A-1727-19

The judge proceeded to analyze the aggravating and mitigating factors under N.J.S.A. 2C:44-1. The judge applied aggravating factor nine because "there ha[d] to be a strong message . . . that to, in effect, take advantage of youth comes with consequence, significant consequence." N.J.S.A. 2C:44-1(a)(9). As to the mitigating factors, the judge applied mitigating factor seven because defendant had no prior criminal activity. N.J.S.A. 2C:44-1(b)(7). The judge also found mitigating factor eight because defendant's remorse was "sincere," and he reflected on his actions which made recurrence unlikely. N.J.S.A. 2C:44-1(b)(8). The judge applied mitigating factor nine because defendant was unlikely to commit an offense again. N.J.S.A. 2C:44-1(b)(9). The judge also determined defendant would be responsive to probation. N.J.S.A. 2C:44-1(b)(10). The judge concluded that the mitigating factors preponderated.

Defendant was sentenced, in accordance with the plea agreement, to 180 days in county jail and two years' probation. Defendant was also subject to Megan's Law registration and ordered to have no contact with the victim.

Defendant did not file an appeal and successfully completed probation with no violations or infractions. On May 22, 2019, defendant filed a PCR petition arguing, among other things, that his trial counsel was ineffective in advising him that he was ineligible for admission into the PTI program.

Defendant certified that, although his trial counsel initially told him that he needed more discovery to decide whether he was eligible, he was later told that he was "not eligible."

In additional support of his petition, defendant provided a report from Peter N. DeNigris, Psy.D. DeNigris noted that defendant never missed or cancelled his treatment sessions, and presented as "forthcoming, accountable, and cooperative." DeNigris opined that defendant gained insight into the factors that contributed to his arrest, which prevented such circumstances from reoccurring.

The PCR judge assumed for the sake of argument that defendant's trial counsel was deficient in misadvising him about his eligibility for PTI admission. Nonetheless, the judge denied defendant's petition on the basis that "the nature of the original charges" and the "compelling need to prosecute offenders who target children" would have precluded him from admission to PTI.[3]

On appeal, defendant raises the following arguments for our consideration:

---

[3] For similar reasons, the PCR judge determined that, if defendant's application to PTI was denied, his appeal would have ultimately been unsuccessful. (1T81:11-20).

A-1727-19

POINT I

PRIOR TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL TO PETITIONER BY FAILING TO PROPERLY REVIEW THE FACTORS FOR ADMISSION INTO [PTI] AND BY FAILING TO RECOMMEND TO PETITIONER THAT HE APPLY FOR ADMISSION TO PTI.

A. Erroneous advice as to eligibility to apply for pre-trial intervention may constitute ineffective assistance of counsel.

B. Defendant was denied effective assistance of counsel, resulting in a plea that was neither knowing, intelligent, or voluntary, where defense counsel erroneously advised defendant he was ineligible for PTI based on the nature of the offense.

C. PCR court's denial of petitioner's request for an evidentiary hearing is entitled to no deference on appeal as [the] court misapplied the law by relying solely on the nature of petitioner's offense in finding the State would likely not have agreed to admit petitioner to PTI.

POINT II

PRIOR TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL TO PETITIONER BY FAILING TO ADVISE DEFENDANT OF OUT-OF-STATE COLLATERAL CONSEQUENCES OF MEGAN'S LAW.

8

A. Ineffective assistance of counsel based on failure to advise client of consequences of plea bargain.

B. Defendant was denied effective assistance of counsel, resulting in a plea that was neither knowing, intelligent, or voluntary, where defense counsel failed to properly investigate or advise defendant about the collateral consequences of Megan's law on defendant's ability to travel, work or reside outside of New Jersey.

C. The PCR court misapplied controlling state precedent in holding that the review of the supplemental plea forms by trial counsel and the sentencing court adequately informed petitioner of the consequences of his plea.

D. PCR court erred in its findings of fact and law, and its order denying an evidentiary hearing must be vacated.

POINT III

THE PCR COURT ABUSED ITS DISCRETION IN DENYING PETITIONER'S PCR REQUEST FOR RELIEF.

When a PCR judge does not hold an evidentiary hearing, our standard of review is de novo as to both the factual inferences drawn by the judge from the record and the judge's legal conclusions. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). When petitioning for PCR, the defendant must establish, "by a preponderance of the credible evidence," entitlement to the requested

9

A-1727-19

relief.  State v. Nash, 212 N.J. 518, 541 (2013) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)).  To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision."  State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must satisfy the two-prong test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).  "First, the defendant must show that counsel's performance was deficient. . . . [And] [s]econd, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.  To meet the first prong, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Ibid.  To meet the second prong, a defendant must show that counsel's errors created a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors.  Id. at 694.

The PCR judge should grant an evidentiary hearing and determine the merits of the claim if the defendant has presented a prima facie claim of ineffective assistance.  Preciose, 129 N.J. at 462.  In deciding whether to grant

an evidentiary hearing, "courts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Id. at 462-63. Claims of ineffective assistance of counsel often warrant an evidentiary hearing "because the facts often lie outside the trial record and because the attorney's testimony may be required." State v. Porter, 216 N.J. 343, 354 (2013) (quoting Preciose, 129 N.J. at 462). The decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)).

"While all defendants may apply for admission into PTI," State v. Roseman, 221 N.J. 611, 622 (2015) (citing N.J.S.A. 2C:43-12(b)), persons charged with first or second-degree crimes, which carry a presumption of incarceration, are merely presumed to be ineligible for PTI. See State v. Nwobu, 139 N.J. 236, 252-53 (1995) (stating that persons charged with second-degree crimes must demonstrate "extraordinary or unusual" facts to establish "'compelling reasons' for admission into PTI"); see also Guidelines for Operation of Pretrial Intervention in New Jersey, Pressler & Verniero, Current N.J. Court Rules, Guideline 3(i) to R. 3:28 at 1169 (2015) ("A defendant charged with a first or second degree offense . . . should ordinarily not be considered for

11

enrollment in a PTI program except on joint application by the defendant and the prosecutor.").

Here, defendant's argument is that he was affirmatively, and incorrectly, advised that he was not eligible for admission to PTI. We are satisfied that, viewing the facts in the light most favorable to defendant, Preciose, 129 N.J. at 462-63, if this assertion is proven by a preponderance of the evidence, it constitutes mistaken legal advice requiring a remedy. See State v. Green, 407 N.J. Super. 95, 98 (App. Div. 2009) (holding that, even though a presumption against eligibility was applicable, "this does not mean that such defendants can be denied the opportunity to apply in the first place.").[4] We are satisfied that the nature of this mistaken legal advice, if substantiated, would constitute deficient performance. See State v. Nuñez-Valdéz, 200 N.J. 129, 139-40, 143 (2009) (finding ineffective assistance of counsel where counsel "provid[ed] misleading, material information [to defendant] that result[ed] in an uninformed plea").

---

[4] We note that our Supreme Court granted certification and summarily remanded that case to reconsider the expanded record. State v. Green, 200 N.J. 471 (2009). On remand, this court stressed that "the court's PTI program must actually consider the merits of the defendant's application." State v. Green, 413 N.J. Super. 556, 561 (App. Div. 2010). Adhering to the original determination, this court once again remanded the case. Id. at 562.

The PCR judge clearly recognized the potential constitutional issue presented in this case. Rather than hold an evidentiary hearing, however, the judge sidestepped the issue and conducted his own analysis of whether defendant would have been accepted into the program. We question the propriety of this procedure, whereby the judge stepped into the shoes of the prosecutor and analyzed the likelihood of defendant's admission into the PTI program pursuant to the factors enumerated under N.J.S.A. 2C:43-12(e). If "a trial [court] does not have the authority in PTI matters to substitute [its] discretion for that of the prosecutor," State v. Von Smith, 177 N.J. Super. 203, 208 (App. Div. 1980), then assuredly the PCR judge cannot subsume the role of the prosecutor and, under these circumstances, decide that defendant would have been denied admission when the prosecutor never passed judgment on this issue in the first instance.

Akin to the facts in Green, defendant was purportedly deprived of his "statutory right to apply for PTI" by not being afforded "the opportunity to make his application." 407 N.J. Super. at 99. We note in passing that the present matter is distinguishable from State v. L.G.-M., 462 N.J. Super. 357 (App. Div. 2020). There, the defendant argued that his trial counsel was ineffective in failing to inform him of the deportation consequences of rejecting PTI,

13

notwithstanding the fact that he discussed the program with his attorney on many occasions and was correctly informed he was eligible to apply, but simply chose not to do so. Id. at 361-62, 364. In this case, in contrast, defendant was told that he could not apply to PTI.

Accordingly, we reverse and remand for an evidentiary hearing.[5] The hearing will allow the parties to present evidence as to whether trial counsel affirmatively misadvised defendant that he was ineligible for the PTI program. If so, defendant shall be given a reasonable opportunity to withdraw his guilty plea to "permit [him] to submit his PTI application." Green, 407 N.J. Super. at 99. We intimate no views on the outcome of any future proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] We also conclude that the case should be assigned to a different judge on remand. See Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005) (requiring assignment of a new judge on remand "to avoid the appearance of bias or prejudice based upon the [original] judge's prior involvement with the matter"); see also Graziano v. Grant, 326 N.J. Super. 328, 349 (App. Div. 1999) (noting an appellate court's authority to direct that a case be assigned to a new judge "may be exercised when there is a concern that the trial judge has a potential commitment to his or her prior findings." (citing New Jersey Div. of Youth and Fam. Servs. v. A.W., 103 N.J. 591, 617 (1986))).

A-1727-19