# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1602-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSHUA LATORRE,

     Defendant-Appellant.

_____

Submitted February 25, 2025 – Decided April 25, 2025

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 22-03-0370.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Zachary G. Markarian, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Joshua Latorre appeals from the trial court's October 27, 2023 order upholding the prosecutor's rejection of his application for admission to the Pretrial Intervention Program (PTI), and his ensuing conviction of fourth-degree child abuse and neglect, N.J.S.A. 9:6-3, memorialized in the November 29, 2023 judgment of conviction. Applying the strong judicial deference required in reviewing such prosecutorial denials and because we discern no patent and gross abuse of the prosecutor's discretionary authority, we affirm.

Defendant is the father of a young son, who at the time of the incident that gave rise to these criminal charges, was three months old. On August 5, 2020, defendant and the child's mother took the child to the hospital with injuries to his leg. Defendant stated that he was taking care of the child that evening when he heard a "snap" as he climbed into bed with the baby. They brought the child to the hospital when they later noticed the child was not moving his leg, it was "rounded," and the child was crying uncontrollably. Defendant contended the injury was accidentally caused while he was changing the child's diaper.

During the investigation, Paulett Diah, M.D. (Dr. Diah), a physician with the Audrey Hepburn Children's House, reviewed the child's medical records related to the incident, and authored a report regarding the child's injuries. Dr. Diah characterized the child's femur fracture as a spiral oblique femur fracture,

A-1602-23

which is a type of fracture caused by a torsional force or twisting mechanism applied to the child's leg. As a result, Dr. Diah opined that the child's injury was inconsistent with the explanation given by defendant. Rather, Dr. Diah concluded that the fractured femur was "concerning for non-accidental injury." Dr. Diah also identified an "acute left posterior parafalcine subdural hematoma" and opined that this injury was also unlikely to have been caused accidentally.

On March 7, 2022, a grand jury indicted defendant, charging him with one count of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4.

On March 29, 2023, pursuant to a negotiated plea agreement, defendant entered a guilty plea to the amended charge of fourth-degree child abuse or neglect. Defendant admitted to performing an unlawful act by using an unnecessary amount of force on the child's leg while he was caring for the child. In exchange for his guilty plea, the State agreed to recommend a probationary sentence with up to 364 days in the county jail and to dismiss the remaining charges. The State further agreed to remove the no-contact order with the child subject to the Division of Child Protection and Permanency's (the Division) recommendation and the family court's approval. The court accepted defendant's plea and scheduled the matter for sentencing on June 2, 2023.

A-1602-23

Before being sentenced, defendant requested permission to file an out-of-time application for admission to PTI. While the State objected to defendant's admission into PTI, the prosecutor stated, based on the amended second-degree charge to a fourth-degree charge, that defendant no longer needed the State's permission to apply for PTI. Thus, the court permitted defendant to apply to PTI.

On July 28, 2023, the Criminal Division Manager approved defendant's admission into PTI. On the same day, the prosecutor filed a letter objecting to defendant's admission, noting the following factors under N.J.S.A. 2C:43-12(e) as its basis for objecting:

> (1)[t]he nature of the offense; (2)[t]he facts of the case; . . . (4)[t]he desire of the complainant or victim to forgo prosecution; . . . (7) [t]he needs and interests of the victim and society; . . . (10) [w]hether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior; . . . (14) [w]hether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution; . . . and (17) [w]hether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

A-1602-23

The State further stated it would file a brief amplifying its reasons for objecting should the defendant appeal the rejection. On September 20, 2023, defendant filed a motion, appealing the State's denial of his enrollment into PTI.

In the October 27, 2023 order, with an accompanying statement of reasons, the court denied defendant's motion, finding that defendant had not overcome the presumption of "no diversion" based on the original second-degree charges. While the court noted that further consideration of defendant's application was unnecessary, the court reviewed the State's reasons for rejecting defendant's application. The court concluded defendant had not "established by clear and convincing evidence that the State's rejection . . . constitute[d] a patent and gross abuse of discretion."

On November 17, 2023, defendant was sentenced to one year of non-custodial probation, which was memorialized in the November 29, 2023 judgment of conviction.

Defendant makes the following singular argument with subparts on appeal:

A-1602-23

<u>POINT I</u>

THE PROSECUTOR'S REJECTION OF DEFENDANT'S ADMISSION INTO THE PRETRIAL INTERVENTION PROGRAM WAS AN ARBITRARY, PATENT, AND GROSS ABUSE OF DISCRETION, WHICH MUST BE CORRECTED BY THIS COURT.

> A. The Prosecutor's Opposition Parroted the Statute and Did Not Consider the Facts of [defendant's] Case, Which Failed to Facilitate Judicial Review, Further the Purposes of PTI, Afford [d]efendant the Ability to Respond, or Dispel the Suspicion of Arbitrariness.

> B. The Prosecutor Clearly Erred in Finding the victim Did Not Wish To Forego Prosecution Where the Victim Was Too Young to Offer An Opinion[.]

> C. The Prosecutor Failed to Explain Why a Conviction and the Attendant Collateral Consequences Were Necessary to Serve the Interests of the Victim and Society Where [defendant] Would Serve the Same Period of Supervision If Admitted to PTI[.]

I.

As with the trial court, our review of a prosecutor's PTI decision is extremely narrow. Because there is a "close relationship" between a prosecutor's charging authority and the PTI program, "courts allow prosecutors wide latitude in deciding whom to divert into the PTI program and whom to prosecute through

6

A-1602-23

a traditional trial." State v. Negran, 178 N.J. 73, 82 (2003) (citing State v. Nwobu, 139 N.J. 236, 246 (1995)). "Judicial review serves to check only the 'most egregious examples of injustice and unfairness.' " Ibid. (quoting State v. Leonardis, 73 N.J. 360, 384 (1977)). A court should only reverse "a prosecutor's decision to deny PTI" when a "defendant 'clearly and convincingly' establishes the decision was a 'patent and gross abuse of discretion.' " State v. Johnson, 238 N.J. 119, 128-29 (2019) (quoting State v. Wallace, 146 N.J. 576, 583 (1996)).

We recognize that a prosecutor's decision to reject a PTI applicant is "afforded great deference." State v. Baynes, 148 N.J. 434, 443 (1997) (quoting Nwobu, 139 N.J. at 246). That deference "is so high that it has been categorized as 'enhanced deference' or 'extra deference.'" Id. at 443-44 (quoting Nwobu, 139 N.J. at 246).

A person charged with a crime "for which there is a presumption of incarceration," as was defendant, are ineligible to apply for admission into PTI without the prosecutor's consent. R. 3:28-1(d)(1). A prosecutor's withholding of consent is subject to appeal for "a patent and gross abuse of discretion." R. 3:28-6(b)(1). Based upon a review of the record and applying this deferential standard, we agree with the trial court that defendant failed to show clearly and

A-1602-23

convincingly that the prosecutor's refusal to sanction his admission into PTI was a patent and gross abuse of prosecutorial discretion.

II.

We begin our analysis by addressing the nuanced issue of whether defendant should be treated as having been charged with a second-degree or the fourth-degree crime to which he pled. Rule 3:28-2 states that "[a]pplications for pretrial intervention shall be made at the earliest possible opportunity, including before indictment, but in any event no later than the Initial Case Disposition Conference, unless good cause is shown or consent by the prosecutor is obtained." This rule supports the trial court's conclusion that the appropriateness for a diversion into PTI is based on the initial charges filed against a defendant. Here, those second-degree charges barred defendant's application to PTI without the prosecutor's consent.

At the June 2, 2023 hearing, the prosecutor, while not agreeing ultimately to defendant's admission into PTI, did acquiesce to defendant applying to the program based on the amended fourth-degree offense. The court agreed to allow defendant to apply. However, neither the State nor the trial court identified any special circumstances as required to overcome the presumption against defendant's admission into PTI for these indicted second-degree offenses. State

v. Roseman, 221 N.J. 611, 623-24 (2015). Nonetheless, because the prosecutor consented and the court permitted defendant to apply, the court considered whether the State's subsequent objection to defendant's admission into PTI constituted a patent and gross abuse of discretion. We discern no error in this alternative approach.

In support of his argument that the State's rejection of his admission into PTI was a patent and gross abuse of discretion, defendant asserts three claims regarding the prosecutor's opposition: (1) it "parroted the statute without considering" the individual facts of defendant's case; (2) it incorrectly asserted "the victim did not wish to forego prosecution where the victim was too young to offer an opinion"; and (3) it failed to explain "why a conviction and attendant collateral consequences were necessary to serve the interests of the victim and society" where defendant would be serving the same period of supervision.

Our Supreme Court has "defined a 'patent and gross abuse of discretion' in the context of a prosecutor's denial of a PTI application" by holding:

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. . . . In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of

9

> will clearly subvert the goals underlying Pretrial Intervention.
>
> [Id. at 625 (omission in original) (quoting State v. Bender, 80 N.J. 84, 93 (1979)).]

Defendant contends that the State's initial letter filed on the same date the PTI Director recommended defendant's admission into PTI, failed to carefully consider all relevant facts and circumstances, without the individualized consideration of the unique circumstances of defendant's case. This contention fails to acknowledge, however, the State's October 13, 2023 response brief in opposition to defendant's motion to appeal his rejection from PTI, amplifying the reasons for the State's opposition. Defendant was given ample advance notice of the State's reliance on and reasoning for certain factors and was given an opportunity for oral argument on October 24, 2023.

Moreover, the State's more detailed response, which did not merely "parrot" the relevant factors, emphasized the nature of the offense. The significant injury to the child, as the trial court explained, was of "great concern given that the victim was an infant at the time of the assault." Thus, the State appropriately placed significant weight on the offense-focused PTI factors.

Nor did the State disregard the position of the child's mother in reuniting with defendant or the Division in recommending the family's reunification and

A-1602-23

termination of the agency's involvement as mitigating factors. Here, we agree with the trial court that it was not a patent and gross abuse of discretion for the State to give weight to protecting the interests of a minor victim who was too young to speak for himself, while recognizing the child's mother did not wish to pursue a prosecution against the child's father. As the trial court aptly noted, "[w]ithout oversight of the law, child victims would be without a needed voice to protect them, and such defendants would be free to commit acts harmful to the interests of society."

Defendant also contends the prosecutor failed to explain why admitting defendant to PTI would not adequately protect the interests of the victim and society. Defendant argues that the "only meaningful difference between PTI and a felony conviction" are the collateral consequences, which fail to serve either the victim's or society's interests. As our Supreme Court explained, a "negotiated non-custodial sentence does not retrospectively impugn the soundness of a previous prosecutorial decision that criminal prosecution rather than pretrial diversion is the appropriate disposition of the charges against [a] defendant." Wallace, 146 N.J. at 588-89. Moreover, as the trial court explained, when evaluating the harm done to society by abandoning a criminal prosecution as compared with the benefits to society from diverting an offender into PTI, the

A-1602-23

court cannot "substitute [its own] discretion for that of the prosecutor" even if the "decision is one that the trial court disagrees with or find to be harsh." State v. Kraft, 265 N.J. Super. 106, 112-13 (App. Div. 1993) (alteration in original) (first quoting State v. Von Smith, 177 N.J. Super. 203, 208 (App. Div. 1980); and then citing State v. DeMarco, 107 N.J. at 562, 566-67 (1987)).

As the trial court acknowledged, the State's opposition did not address every factor. However, defendant does not cite to any inappropriate or irrelevant factors considered, and the trial court correctly "presume[d] that a prosecutor considered all relevant factors, absent a demonstration by [] defendant to the contrary." Wallace, 146 N.J. at 584 (citing Bender, 80 N.J. at 94). We are satisfied the State's analysis of the relevant factors provided sufficient basis for the trial court to conclude that the prosecutor considered "the facts in light of the relevant law" in rejecting defendant's enrollment into PTI. Ibid. (citing State v. Sutton, 80 N.J. 110, 117 (1979)). Thus, we discern no error in the trial court's review of the State's reasons for denying defendant admission into PTI and in its decision not to override the prosecutor's rejection of defendant's application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1602-23